1  **BARIC & ASSOCIATES**
   Steven D. Baric, Esq., Bar No. 200066
2  4590 MacArthur Blvd., Ste 650
   Newport Beach, California 92660
3  Telephone: (949) 201-4368
   Email: sbaric@bariclaw.com
4

5

6  Attorneys for Plaintiff
   **JD BOLS**

7

8                  **UNITED STATES DISTRICT COURT**

9          **IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JD BOLS,                          ) CASE NO.  **'20 CV 0873 BEN BLM**
                                      )
12                                    )
                                      ) Assigned for All Purposes to:
13                      Plaintiff,    ) Judge:
                                      ) Dept:
14       vs.                          )
                                      ) **PLAINTIFF JD BOLS' VERIFIED**
15                                    ) **COMPLAINT FOR VIOLATIONS OF**
                                      ) **THE (1) FIRST, FIFTH AND**
16  **Gavin Newsom**, in his official capacity as ) **FOURTEENTH AMENDMENTS TO THE**
    Governor of California; **Xavier Becerra**, in his ) **U.S. CONSTITUTION (2) VIOLATION**
17  official capacity as the Attorney General of ) **OF THE CAL. CONSTITUTION ART 1**
    California; **Sonia Y. Angell M.D.,** in her official ) **AND (3) THE CALIFORNIA**
18  capacity as the Director of State Public Health ) **GOVERNMENT CODE SEC 8572 AND**
    Officer; **Kevin Faulconer**, in his official capacity ) **REQUEST FOR DECLARATORY**
19  as Mayor of San Diego, **Wilma J. Wooten M.D.** ) **RELIEF, INJUNCTIVE RELIEF AND**
    **M.P.H.** in her official capacity as Medical Officer ) **DAMAGES.**
20  for the County of San Diego, **Nathan Fletcher**, in )
    his official capacity as member of the San Diego )
21  Board of Supervisors, **Kristen Gaspar** in her ) Complaint Filed:
    official Capacity as a Member of the San Diego ) Trial Date:  None Set
22  Board of Supervisors, **Jim Desmond**, in his )
    official capacity as a member of the San Diego )
23  Board of Supervisors, **Greg Cox**, in his official )
    capacity as a member of the San Diego Board of ) **JURY TRIAL DEMANDED**
24  Supervisors and **Dianne Jacob** in her official )
    capacity as a member of the San Diego County )
25  Board of Supervisors, **William Gore** in his official )
    capacity as San Diego Sheriff. )
26                                    )
                                      )
27                      Defendants.   )
28

                                  1

1  **PLAINTIFF JD BOLS**, by through his attorneys of record, **BARIC and ASSOCIATES**  brings

2  claims against the above-named Defendants Gavin Newsom, in his official capacity as Governor of

3  California; Xavier Becerra, in his official capacity as Attorney General of California; Sonia Y. Angell,

4  MD, MPH, in her official capacity as the Director and State Public Health Officer, Kevin Faulconer in

5  his official capacity as Mayor of San Diego, Wilma J. Wooten M.D. M.P.H.in her official capacity as

6  Medical Officer for the County of San Diego, Nathan Fletcher in official capacity a member of the San

7  Diego Board of Supervisors, Kristen Gaspar in her official capacity as member of the San Diego Board

8  of Supervisors, Jim Desmond in his official capacity as member of the San Diego Board of Supervisors,

9  Greg Cox in his official capacity as member of the San Diego Board of Supervisors, Dianne Jacob in her

10  official capacity as a member of the San Diego Board of Supervisors, William Gore in his official

11  capacity as Sheriff of San Diego County ; allege and complain as follows:

12  <u>**INTRODUCTION**</u>

13  In response to the novel coronavirus pandemic, the State of California instituted a series of state

14  and county-wide orders (the "Orders") to stem the spread of COVID-19.  On March 4, 2020, Governor

15  Newsom proclaimed a state of emergency as a result of the threat of COVID-19.  On March 19, 2020,

16  Governor Newsom issued Executive Order N-33-20 in which he ordered "***all residents are directed to***

17  ***immediately heed the current State public health directives.***"  The State public health directive requires

18  that "***all individuals living in the State of California to stay home or at their place of residence except***

19  ***as needed to maintain continuity of operations of the federal critical infrastructure sectors.***"  As well-

20  meaning as these Orders may be with respect to the public's health, safety and welfare, they have come at

21  a steep price with respect to the complete and utter restraint on Californians' civil rights and liberties. This

22  complaint challenges the constitutionality of Defendants' Orders to curb Plaintiff's civil rights and

23  liberties by ordering generally (1) **unprecedented in American History "shelter-in-place" orders** and

24  (2) **protocols effectively destroying so-called "Non-Essential" businesses all across the State of**

25  **California.**

26  If not enjoined, Defendants' Orders will not only continue to violate Plaintiff's rights under both

27  the California and U.S. Constitutions, but will continue to inflict massive and widespread economic

28  damage to Plaintiff—all while unconstitutionally placing the burden of Defendants' respective Orders on

the backs of both small and large "Non-Essential" businesses—such as those of Plaintiff—who have already been financially crippled. Indeed, some of Plaintiff's "Non-Essential" businesses might never financially recover as a result of Defendants' Orders and may end up entirely out of business. The stakes for immediate relief from this Court for Plaintiff and his tenants could not be higher.

Accordingly, Plaintiff bring this action challenging the Constitutionality of Defendants' Orders, which have deprived him of numerous rights and liberties under both the U.S. and California Constitutions.

In doing so, Plaintiff seek the following relief: (1) equitable and injunctive relief to enjoin the enforcement of Defendants' Orders; (2) declaratory relief from this Court in declaring that Defendants' Orders violate Plaintiff's civil rights under: (a) 42 U.S.C. Section 1983 of the Federal Civil Rights Act ("Section 1983"), (b) the Due Process and (c) Equal Protection Clauses of the 5th and 14th Amendments, and (d) Article 1 Sections 1, 7 and 19 of the California Constitution and (e) the 1st Amendment; (3) attorney's fees and costs for the work done by Plaintiff' counsel in connection with this lawsuit in an amount according to proof; and (4) for such other and further relief as the Court deems just and appropriate.

## JURISDICTION AND VENUE

1.   This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff' constitutional rights to due process and equal protection rights under the First, Fifth and Fourteenth Amendments to the U.S. Constitution. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42U.S.C.§1988.

2.   The Southern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work in, exercise their authority in their official capacities, and will continue to enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

///

3

COMPLAINT

## PARTIES

3.   At all times relevant to this complaint, Plaintiff JD Bols was an individual residing in San Diego County, California. Mr. Bols is a business owner who is landlord to several churches and beauty salons in the County of San Diego.  Since the Defendant Newsom's order to "shelter inside" Bols has been unable to exercise his Constitutional Rights and has suffered significant damage to his businesses and personal freedoms.

4.   Defendant Gavin Newsom ("Newsom") is made a party to this Action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed Executive Order N33-20 (the "Executive Order") on March19, 2020.

5.   Defendant Xavier Becerra ("Becerra") is made a party to this Action in his official capacity as the Attorney General of California. Under California law, Becerra is the chief law enforcement officer with supervision overall sheriffs in the State. Cal. Const. Art. V, §13.

6.   Defendant Sonia Y. Angell, MD, MPH ("Dr. Angell") is made a party to this Action in her official capacity as the Director and State Public Health Officer. Dr. Angell is sued herein in her official capacity under the rule of Ex Parte Young to challenge the constitutionality of her office's list of "Essential Critical Infrastructure Workers" which was issued by Dr. Angell on March 22, 2020 to complement Newsom's Executive Order. See *Ex Parte Young, Id.*

7.   Defendant Kevin Faulconer ("Faulconer") is made a party to this Action in his official capacity as the Mayor of San Diego in the State of California. Faulconer is sued herein in his official capacity under the rule of Ex Parte Young to enjoin the enforcement of his Civil Order, which was instituted by Faulconer on March 30, 2020, which shut down all "non-essential" businesses. See *Ex Parte Young, 209 U.S. 123, 152-154(1908).*

8.   Defendant Wilma J. Wooten M.D. M.P.H. ("Wooten") is made a party to this Action in her official capacity as the San Diego County Director and Public Health Officer. Wooten signed the San Diego County Amended Order on or about April 30, 2020.

9.   Defendant William Gore ("GORE") is made a party to this Action in his official capacity as the San Diego County Sheriff.  Under California law, Gore has the responsibility to enforce the San Diego

COMPLAINT

County Order in San Diego County. See Cal. Gov't. Code §26601.

10. Defendant Greg Cox ("Cox") is made a party to this Action in his official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. See, e.g., Cal. Gov't. Code § 25000, et seq.; Cal. Health & Safety Code §101000.

11. Defendant Kristen Gaspar ("Gaspar") is made a party to this Action in his official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. See, e.g., Cal. Gov't. Code § 25000, et seq.; Cal. Health & Safety Code §101000.

12. Defendant Jim Desmond ("Desmond") is made a party to this Action in his official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. See, e.g., Cal. Gov't. Code § 25000, et seq.; Cal. Health & Safety Code §101000.

13. Defendant Nathan Fletcher ("Fletcher") is made a party to this Action in his official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. See, e.g., Cal. Gov't. Code § 25000, et seq.; Cal. Health & Safety Code §101000.

14. Defendant Dianne Jacob ("Jacob") is made a party to this Action in his official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. See, e.g., Cal. Gov't. Code § 25000, et seq.; Cal. Health & Safety Code §101000.

15. As alleged herein, Defendants are responsible for the implementation of various Executive Order(s) and other Civil Orders ("Orders") that are in direct violation of the U.S. and California Constitutions, including but not limited to, 42 U.S.C. Section 1983. Accordingly, each and every Defendant acted under color of state law with respect to all acts or omissions here in alleged.

///

///

///

COMPLAINT

**MATERIAL FACTS AND ALLEGATIONS**

16. Plaintiff reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

17. The global COVID-19 pandemic brought on by the Coronavirus and the resulting government action has caused catastrophic and unprecedented economic damage across the world. However, since the initial outbreak of the COVID-19 in the United States in February and March 2020, the federal government's projections of the anticipated national death toll related to the virus has decreased substantially, by an order of magnitude.

18. Despite such revisions, Defendants have increasingly restricted Plaintiff engagement in constitutionally protected activities amending their initial orders on several occasions further limiting the constitutional rights of the Plaintiff. On March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of COVID-19.

19. In the State of California, Defendant Newsom issued a "State of Emergency" order on March 4, 2020 in response to the threat of the spread of COVID-19 throughout California's communities. ***On March 18, 2020 in a letter to the President, Governor Newsom claimed that over 25 million Californians would contract the corona virus and therefore he was declaring a state of emergency.*** This prediction amounts to 56% of the States population. ***Governor Newsom's assertion to the President so far has proved massively incorrect. As of the date of this filing .001 percent of California's population has contracted the corona virus.*** Defendant Newsom subsequently issued Executive Order N-33-20 on March 19, 2020 ("Executive Order"), which, among other things, mandated that "all individuals living in the State of California" were to "***stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors at outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."***

20. Defendant Newsom's Executive Order went on to acknowledge that the federal government had "identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Defendant Newsom ordered that "Californians working in these 16 critical infrastructure sectors

COMPLAINT

continue their work because of the importance of these sectors to Californians' health and well-being."

21. Further, Defendant Newsom declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus." Thereafter, Defendant Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 86654."

22. As a result of the issuance of Defendant Newsom's Order, California businesses, such as those of Plaintiff, which were not part of the 16 "critical infrastructure sectors" described above, and therefore, were deemed "Non-Essential" businesses, were effectively ordered, under penalty of fine and imprisonment, to shut down.

23. Likewise, Defendant Wooten issued similar "stay-in-place" and "shut-down" orders for all "Non-Essential" businesses initially on or about March 13, 2020 for the County of San Diego, it has been amended several times subsequently.("County Orders"). Since the passage of the County Orders, Defendant Gore ("County Sheriff") has sought to vigorously enforce these orders against Plaintiff, other San Diegans and "Non-Essential" businesses.  For example, Defendant Gore's Sheriff's department cited 22 individuals for merely parking their cars near a beach and watching the sunset.

24. Additionally, on March 22, 2020, Defendant Dr. Angell issued a comprehensive directive enumerating all of the various types of "Essential Critical Infrastructure Workers" that were to "help state, local, tribal and industry partners as they work to protect communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security".

25. Taken together, Defendants' Orders have caused widespread and catastrophic damage to the California economy through the government-mandated closure of not only Plaintiff' business, but millions of other "Non-Essential" businesses across California. These orders have had massive chilling effect on the free exercise of Plaintiff personal constitutional rights as well.  The Plaintiff is a commercial and residential landlord. As a result, Plaintiff tenants have faced numerous difficulties with respect to their financial obligations, have been forced to lay off significant numbers of their employees, and face a very real and a very existential threat to their collective survival and business operations.  This has impacted the plaintiff as he relies on their rent payments to meet his financial obligations. Additionally, the board

COMPLAINT

shelter inside orders have infringed on the Constitutional rights of Californians throughout the state.

26. For example, Plaintiff has many professional salon tenants, which many have been in business for twenty years, was forced to lay off all their staff and have no income themselves for the first time in their lives since Governor Newsom, Mayor Faulconer and the County of San Diego instituted their respective "shut-down" orders, despite the fact that salons by nature and licensing have very high standards of cleanliness. In addition, the Plaintiff has been told numerous times by different tenants of the huge emotional burden this has placed on them and their families. They have particularly been stressed by not knowing when they can return to work.

27. Likewise, the Plaintiff rents to many churches. A key part of their faith is fellowship with other believers which is made virtually impossible by Governor Newsom determining churches were non-essential. Most church goers deem their church very essential to their spiritual well-being. Despite the fact that churches could still meet while conforming with "social distancing" guidelines they are banned from gathering together. This situation has impacted Plaintiff directly as these churches have struggled to meet financial obligations and put their future viability at risk.

28. While "Essential" businesses continue to operate, and indeed, turn a profit (if not historical profits) during this time of crisis, Plaintiff' "Non-Essential" businesses have suffered immeasurably at the hands of government overreach and unconstitutionally restrictive orders passed and enforced by Defendants which have had immense disparate impact across every segment or sector of business in California.

29. In addition, Plaintiff has wished to exercise his First Amendment constitutional rights but have been precluded from doing so due to these extreme shelter in place orders. They have been unable to leave their home but for limited circumstances. Plaintiff has planned to attend several protests in San Diego but has refrained from doing so because of concerns of government action. This situation was underscored by the fact that on April 4, 2020, 22 people were cited and fined by the San Diego Sheriffs Department for merely watching the sunset in Encinitas California. Defendant Gore justified the actions of his department by stating that "everyone is required to stay inside but for to get food, get essential health care or go to an essential job." Therefore, but for very limited circumstances, free exercise of ones constitutional rights will be met with extreme government action.

30. Accordingly, Plaintiff complain against Defendants, and each of them, for violation of the Federal

Civil Rights Act, 42 U.S.C. Section 1983 ("FCRA"), to declare and enjoin the enforcement of the following orders: (a) Defendant Newsom's Executive Order N-33-20 issued on March 19, 2020 ("Executive Order"); (b) Defendant Dr. Angell's designation of "Essential Critical Infrastructure Workers" issued on March 22, 2020, which referenced Defendant Newsom's Executive Order issued three (3) days prior (part of the "Executive Order"); (c) Defendant Faulconer's "Executive Order" issued on March 16, 2020 for the city of San Diego ("SD Order"); (d) County Orders most recently amended on May 7, 2020 ("County Orders").

31. Plaintiff have standing to bring Section 1983 claims since they are aggrieved in fact businesses that are the subject of enforcement of the overbroad and unconstitutional Executive, Faulconer and County Orders (collectively, the "Orders") which have the effect of forcing Plaintiff to bear a public burden by entirely eviscerating Plaintiff' ability to operate their respective businesses.

32. Defendants' Orders are in violation of 42 U.S.C. Section 1983, as is the enforcement of these Orders by Defendants Gore ("County Sheriff"), which should be enjoined under Section 1983, due to the following circumstances:

    a. The Orders plainly violate the Due Process and Equal Protection Clauses of the 5th and 14th Amendments in that they unconstitutionally and disparately apply one set of rules to businesses arbitrarily deemed "Essential" versus all other businesses (such as Plaintiff) that are deemed "Non-Essential", which must close pursuant to the Orders. Plaintiff aver that ALL businesses in the State of California are "Essential" to the health, welfare and well-being of its citizens, and that the general health outcome sought through the passage of these Orders (i.e. lowering the curve of the Coronavirus) could be accomplished through less restrictive means.

    b. The Orders effectively amount to an impermissible "partial" or "complete" taking in violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution in that the prohibition of Plaintiff's operation of their "Nonessential" businesses constitutes a regulatory taking of private property, for public purpose, without providing just compensation therefor. Furthermore, the Orders violates the Takings Clause of the Fifth Amendment in that the complete prohibition on the business operations of "Non-Essential"

COMPLAINT

businesses constitutes an irrational, arbitrary, and capricious law bearing no rational basis to any valid government interest. The notion that the government-ordered shutdown of "Non-Essential" businesses (such as Plaintiff's) is absolutely necessary in curbing the spread of the Coronavirus constitutes an unconstitutional infringement on Plaintiff's civil rights and liberties to operate in a free-market economy. As national and statewide data has recently suggested, the economic impact of the mandatory, unconstitutional closures of "Non-Essential" businesses has had an unnecessarily devastating and unprecedented crippling effect on local and state economies. ALL businesses are 'essential' and necessary to the maintenance of the health, welfare and prosperity of California's citizens.

    c.  The Orders further violate the substantive and procedural due process clauses of the Fifth and Fourteenth Amendments to the U.S.Constitution.

    d.  The Orders violate the First Amendment Freedom to Assembly, Exercise and Petition Clauses.

    e.  The Orders further violate Article 1 Sections 1, 7 and 19 of the California Constitution.

33. Defendants' Orders are not "narrowly tailored" to further a compelling governmental interest. Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "Essential" businesses and activities, provided that social distancing practices are observed. Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiff to engage in equivalent business activities provided that Plaintiff also adhere to the social distancing guidelines currently in place. Additionally, the shelter in place orders are so broad that they infringe on constitutional rights.

34. Unless and until injunctive relief is granted, Plaintiff will continue to suffer irreparable harm for which he is left without an adequate remedy at law, in that they are subject to criminal cases (i.e. misdemeanor citations and fines) based on the enforcement of the Orders by the County Sheriff. For example, Defendant Newsom has made it a point to "prosecute" and "fine" all non-conforming "Non-Essential" businesses that refuse to close their doors and shutdown their lawful business operations during this pandemic.

///

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE FIFTH AMENDMENT**

**(Right to Travel as enforced by 42 U.S.C.§1983**

**(By Plaintiff against All Defendants)**

35. Plaintiff reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

36. While not explicitly defined in the U.S. Constitution, the Supreme Court has "acknowledged that certain unarticulated rights are implicit in enumerated guarantees. … Yet these important but unarticulated rights [association, privacy, presumed innocent, etc.] have nonetheless been found to share constitutional protection in common with explicit guarantees." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 579-580 (1980).

37. "The right to travel is a part of the liberty of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." Kent v. Dulles, 357 U.S.116,127(1958).

38. Courts have found that "[f]reedom of movement is kin to the right of assembly and to the right of association. These rights may not be abridged. Aptheker v. Secretary of State, 378 U.S. 500, 520 (1964).

39. The Supreme Court has found that this right to travel includes in state, intra state, or foreign travel. See e.g. Kent v. Dulles, 357 U.S. at 126 "Freedom of movement across frontiers in either direction, and inside frontiers as well, was apart of our heritage."

40. The reason that the right to travel is fundamental is because "[f]reedom of movement, at home and abroad, is important for job and business opportunities – for cultural, political, and social activities – for all the commingling which gregarious man enjoys." Aptheker, 378 U.S. at 519-520 (1964). See also Kent, 357 U.S. at 126 where "[t]ravel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values."

41. Even though we are in a state of emergency and people may abuse the right to travel, citizens do not lose their Constitutional rights. See Aptheker, 378 U.S. at 520 "Those with the right of free movement use it at times for mischievous purposes. But that is true of many liberties we enjoy. We

11

1   nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as

2   to give rise to punishable conduct is part of the price we pay for this free society."

3      42. When a government practice restricts fundamental rights like the right to travel, it is subject to

4   "strict scrutiny" and can be justified only if it furthers a compelling government purpose, and, even

5   then, only if no less restrictive alternative is available. See, e.g. Memorial Hospital v. Maricopa County,

6   415 U.S. 250, 257-258 (1974); Dunn v. Blumstein, 405 U.S. 330, 339-341 (1972); Shapiro v.

7   Thompson, 394 U.S. 618, 19 (1969), Maher v. Roe, 432 U.S. 464, 488(1977).

8      43. Both Defendant Newsom's Executive Order and the County Orders (collectively as the

9   "Orders") mandate that Plaintiff stay at home, not exercise his personal constitutional rights and shut

10  down his "Non-Essential" businesses.

11     44. Requiring Plaintiff to abstain from exercising personal freedoms and conducting business

12  operations, even those in compliance with the CDC's social distancing guidelines, violates Plaintiff's

13  Constitutional right to travel.  Additionally, requiring Plaintiff to remain in his home and preventing

14  him from participating in such Constitutionally protected activities such freedom to assemble, freedom

15  of expression and freedom to exercise religion is also in violation of the Constitution.

16     45. Unless enjoined, Defendants will act under color of state law to deprive Plaintiff of their right to

17  travel as protected by the Due Process Clause.

18     46. Plaintiff have no adequate remedy at law and will suffer serious and irreparable harm to their

19  constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

20     47. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff are entitled to declaratory relief and

21  temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the

22  Orders.

23     48. Plaintiff found it necessary to engage the services of private counsel to vindicate their rights

24  under the law. Plaintiff are therefore entitled to an award of attorneys 'fees pursuant to 42U.S.C.§1988.

25  ///

26  ///

27  ///

28  ///

12

COMPLAINT

**SECOND CAUSE OF ACTION**

**DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT**

**(By Plaintiff against All Defendants)**

49.  Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

50. Plaintiff have a fundamental property interest in conducting lawful business activities and free exercise of personal liberty and freedom.  Both of these rights are protected by the Due Process Clause of the Fourteenth Amendment.

51. The Orders and Defendants' enforcement thereof, violate Plaintiff substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. See Duncan v. Louisiana, 391 U.S. 145, 147–149 (1968). In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 453 (1972); Griswold v. Connecticut, 381U.S.479,484–486(1965).

52. Defendants' Orders, which expressly (1) deprive Plaintiff of his rights to personal exercise his constitutional rights and freedoms and (2) deny Plaintiff of his rights and liberties in lawfully operating his businesses by ordering the closure of "Non-Essential" businesses, did not afford Plaintiff with a constitutionally adequate hearing to present his case for his businesses to not be shut down. At a minimum, Plaintiff avers that they should have been able to decide for himself whether to "shut down" if his businesses / business models were not equipped to properly deal with health and safety guidelines issues by the federal and California state governments in connection with the COVID-19 crisis.

53. Defendants failed to comply with the procedural and substantive requirements of the U.S. Constitution in connection with Plaintiff's rights and liberties as they relate to his respective properties businesses, which would have given Plaintiff a meaningful opportunity to respond to the proposed Orders and explain how and why they were so deeply flawed and unconstitutional as applied to Plaintiff.

13

COMPLAINT

54. Because Defendants' decisions in issuing their Orders were made in reliance on procedurally deficient and substantively unlawful processes, Plaintiff were directly and proximately deprived of their property, and consequently, their ability to lawfully operate their businesses without unconstitutional government over reach.

55. Because Defendants' decisions were made in reliance upon an arbitrary and capricious interpretation of the California Constitution and related laws and statutes with respect to their ability to order the State-wide shelter in place order and "closure" of all "Non-Essential" businesses, Plaintiff were directly and proximately deprived of their property rights absent substantive due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

56. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

57.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

58. Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorneys' fees pursuant to 42U.S.C.§1988. Plaintiff is entitled to compensatory damages, attorney`s fees under 42 U.S.C.§1988, and all applicable law, and such additional relief as the Court deems just.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

#### (By All Plaintiff Against All Defendants)

59. Plaintiff reallege all prior paragraphs of this complaint and incorporates the same herein by this reference.

60. At its core, the Equal Protection Clause of the 14th Amendment to the U.S. Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups. In other words, persons similarly situated must be similarly treated. Equal protection is extended when the rules of law are applied equally in all like cases

and when persons are exempt from obligations greater than those imposed upon others in like circumstances

61. The Orders and Defendants' enforcement thereof violate the Fourteenth Amendment, both facially and as-applied to Plaintiff. The Fourteenth Amendment of the Constitution provides that "[n]state shall...deny to any person within its jurisdiction the equal protection of the laws." Equal protection requires the state to govern impartially—not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objection.

62. Defendants have intentionally and arbitrarily categorized California businesses and conduct as either "Essential" or "Non-Essential." Those businesses classified as "Essential," or as participating in "essential services", are permitted to go about their business and activities provided certain social distancing practices are employed. Those classified as "Non-essential," or as engaging in Non-essential activities, are required to shut down and have their workers stay in their residences, unless it becomes necessary for them to leave for one of the enumerated "Essential" activities.

63. Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right, including the right to due process and the right to travel(both inter state and intra state), among others.

64. Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

65.  Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

66. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

67. Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorneys 'fees pursuant to 42 U.S.C.§1988.

///

///

///

COMPLAINT

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**

**(By Plaintiff Against all Defendants)**

68. Plaintiff allege all prior paragraphs of this complaint and incorporates the same herein by this reference.

69. The Supreme Court has long held that "the Fifth Amendment…was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." See Armstrong v. United States (1960) 364 U.S. 40, 49. 99. The California Supreme Court has found that "While the police power is very broad in concept, it is not without restrictions in relation to the taking of damaging of property. When it passes beyond proper bounds in its invasion of property rights, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation." House v. Los Angeles County Flood Control Dist., 25 Cal.2d 384 (1944). (Emphasis added). The House Court went on to specifically list four (4) examples when a taking was not eligible for compensation: (1) destroying a building in front of a fire so as to create a fire break, (2) destroying a diseased animal, (3) rotten fruit or (4) infected trees.

70. In this case, none of examples apply to Plaintiff' situation. Defendants' Orders mandated that because Plaintiff were "Non-Essential" businesses, they were required to "shut down" and cease all operations as a means to help curb the spread of COVID-19. Such a mandate completely and unconstitutionally deprived Plaintiff of all economically beneficial use of their businesses without just compensation.

71. While the "police power" is inherent in a sovereign government and is reserved for the States in the 10th Amendment to the U.S. Constitution, it is not without constitutional limits. See Euclid v. Ambler Realty Company, 272 U.S. 365 (1926) (holding that local governments may protect the general welfare through the enactment of residential zoning ordinances).

72. In California specifically, the Constitution directly gives this power to cities and counties. As such, these agencies (such as the County Defendants) have the power and authority to make and enforce laws to protect public health and safety to the extent that they do not conflict with CA state laws. See Cal. Const. Article XI Section 7; Miller v. Board of Public Works, 195 Cal.477 (1925).

73. However, a government's "police power" in this area is restricted by Constitutional considerations, including the 5th Amendment's "Takings Clause", as well as Due process and Equal Protection. Defendants' Orders and the enforcement thereof has caused both a complete and total regulatory and physical taking of Plaintiff' property without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.

74. At a minimum, the effect of Defendants' Orders constitutes a "partial" taking under the Penn Central three-factor test. See Penn Central Trans.Co. v. City of NewYork, 438 U.S.104,124 (1978). As a result, Defendants' blatant violation of the Takings Clause of the 5th Amendment has caused proximate and legal harm to Plaintiff. Plaintiff have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

75. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

76. Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorneys' fees pursuant to 42U.S.C.§1988.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Constit. Art. 1, Sec. 1)

77. Plaintiff allege all prior paragraphs of this complaint and incorporates the same herein by this reference.

78. Since 1879, the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens. Chief among those rights and liberties are those found in Article 1 of the California Constitution. Article 1, Sections 1 of the California Constitution provides, in pertinent part: All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

79. Defendants' Orders have proximately and legally caused tremendous financial harm not just to Plaintiff businesses, but to the entire California economy, which will continue to have deleterious

COMPLAINT

effects unless and until Defendants are enjoined by this Court from enforcing the irrespective Orders.

80. California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." Ex parte Martin, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease…"Id. Defendants' Orders have not only interfered with Plaintiff's rights and liberties as set forth under Article1, Sections1, 7, and 19 of the California Constitution, but have further deprived them of the use, enjoyment and ability to operate his businesses on account of a discriminatory classification as "Non-Essential" businesses.

81. Defendants' Orders have proximately and legally caused tremendous financial harm not just to Plaintiff's businesses, but to the entire California economy, which will continue to have deleterious effects unless and until Defendants are enjoined by this Court from enforcing their respective Orders. Additionally, their draconian shelter in place orders have greatly impacted the exercise of personal freedoms

82. California courts have held that Public Health Officials' authority over the rights of personal liberty is limited. Before exercising their full powers to quarantine, there must be "reasonable grounds [] to support the belief that the person so held is infected." Ex parte Martin, 83 Cal. App. 2d 164 (1948). Public Health Officials must be able to show "probable cause to believe the person so held has an infectious disease."Id.

83. California courts found that Public Health Officials could not quarantine 12 blocks of San Francisco Chinatown because of nine (9) deaths due to bubonic plague. See Jew Ho v. Williamson, 103 F. 10 (C.C. Cal. 1900), and Wong Wai v. Williamson, 103 F. 1 (C.C.Cal.1900). 112. The court found it "purely arbitrary, unreasonable, unwarranted, wrongful, and oppressive interference with the personal liberty of complainant" who had "never had or contracted said bubonic plague; that he has never been at any time exposed to the danger of contracting it, and has never been in any locality where said bubonic plague, or any germs of bacteria thereof , has or have existed". JewHo,103F.10(C.C.Cal.1900). 113.

84. California courts have found that "a mere suspicion [of a contagious disease], unsupported by

facts giving rise to reasonable or probable cause, will afford no justification at all for depriving persons of their liberty and subjecting them to virtual imprisonment under a purported order of quarantine." Ex parte Arta, 52 Cal. App. 380, 383 (1921) (emphasis added). 114. In Jew Ho v. Williamson, 103 F. 10 (C.C. Cal. 1900), and Wong Wai v. Williamson, 103 F. 1 (CC Cal. 1900), the California courts found that there were more than 15,000 people living in the twelve blocks of San Francisco Chinatown who were to be quarantined. The courts found it unreasonable to shut down the ability of over 15,000 people to make a living because of nine deaths. This was one death for every 1,666 inhabitants of Chinatown.

85. Requiring Plaintiff to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake and requiring shelter inside order, violates his California Constitutional liberty rights.

86. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

87.  Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

<u>**SIX CAUSE OF ACTION**</u>

**VIOLATION OF THE CALIFORNIA CONSTITUTION**

**Right to Liberty (Cal. Const. Art. 1, §7)**

**(By Plaintiff against All Defendants)**

88. Plaintiff allege all prior paragraphs of this complaint and incorporates the same herein by this reference.

89. Article1, Section7 of the California Constitution provides, in pertinent part: A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this State may impose upon the State of

California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

90. California's constitutional guarantee of equal protection and the Fourteenth Amendment's guarantee of equal protection are substantially equivalent and analyzed in similar fashion. Kenneally v. Medical Board, 27 Cal.App. 4th 489 (App. 2 Dist.1994).

91. In addition, California's constitutional guaranty of equal protection under Article 1 Section 7 of the California Constitution has been judicially defined to mean that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty and property and in their pursuit of happiness. People v. Romo, 14 Cal.3d 189 (1975); Gray v. Whitmore, 17Cal.App.3d1(1971). 122. Requiring Plaintiff to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

92. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

93.  Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal.Const.Art.1,§19)

### (By Plaintiff against All Defendants)

94. Plaintiff allege all prior paragraphs of this complaint and incorporates the same herein by this reference.

95. Article1, Section19 of the California Constitution provides, in pertinent part:

Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.

96. California courts have routinely held that the California Constitution provides just compensation to property owners when their land is taken for public use because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. Jefferson Street Ventures, LLC v. City of Indio, 236 Cal. App. 4th 1175 (App.4Dist.2015).

97. Moreover, the principle behind the concept of just compensation for property taken for public use is to put the owner in as good a position pecuniary as he or she would have occupied if his or her property had not been taken. City of Carlsbad v. Rudvalis, 109 Cal.App.4th667(App.4Dist.2003).

98. Finally, the constitutional guarantee of just compensation for property taken by the government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking. Emeryville Redevelopment v. Harcros Pigments, Inc., 101 Cal.App.4th 1083 (App. 1Dist.2002).

99. Here, requiring Plaintiff to abstain from conducting lawful business in the State of California, despite other compliance measures being taken to satisfy the public health interests at stake, violates their California Constitutional liberty rights.

100. Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

101. Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section1021.5.

///

///

///

**EIGHT CAUSE OF ACTION**

**VIOLATION OF CAL. GOV. CODE § 8572**

**Commandeering Private Property or Personnel**

**(By Plaintiff against Defendant Newsom)**

102.     Plaintiff reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

103.     The State of California's Government Code Title 2, Chapter 7, Article 3, Section 8572, reads, in pertinent part: In the exercise of the emergency powers hereby vested in him during a state of war emergency or state of emergency, the Governor is authorized to commandeer or utilize any private property or personnel deemed by him necessary in carrying out the responsibilities hereby vested in him as Chief Executive of the state and the state shall pay the reasonable value thereof. (Emphasis added).

104.     On March 4, 2020, and in response to the threat of the spread of COVID-19 through out California's communities, Defendant Newsom issued a "State of Emergency".

105.     On March 19, 2020, Defendant Newsom subsequently issued Executive Order N-33-20 on March 19, 2020 ("Executive Order"), which, among other things, mandated that "all individuals living in the State of California" were to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors at outlined at https://www.cisa.gov/identifying-critical infrastructure-during-covid-19."

106.     Defendant Newsom's Executive Order went on to acknowledge that the federal government had "identified 16 critical infrastructure sectors (discussed herein) whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Defendant Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being."

107.     Further, Defendant Newsom declared that "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the

COMPLAINT

spread of the virus." Thereafter, Defendant Newsom directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 86658."

108.    As a result of the issuance of Defendant Newsom's Order, California businesses, such as those of Plaintiff, which were not part of the 16 "critical infrastructure sectors" described above, and therefore, were deemed "Non-Essential" businesses, were effectively ordered, under penalty of fine and imprisonment, to shut down and cease doing their lawful daily business activities.

109.    By virtue of his Executive Order, Defendant Newsom commandeered and utilized Plaintiff's' "Non-Essential" businesses for the purpose of slowing the spread of COVID-19. To date, however, the State of California has not paid Plaintiff the "reasonable value thereof" in exchange for Defendant Newsom's commandeering and utilization of Plaintiff' "Non-Essential"businesses.

110.    Plaintiff has found it necessary to engage the services of private counsel to vindicate their rights under Cal. Gov. Code § 8572. Plaintiff is therefore entitled to an award of attorney fees and costs pursuant to California C.C.P. Section1021.5.

## NINTH CAUSE OF ACTION

### Violation of First Amendment

### Freedom of Assembly Clause (42 U.S.C. § 1983)

### (Against all Defendants)

111.    Plaintiff reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

112.    The Governors Directive and Defendant's enforcement thereof violate the First Amendment both facially and as applied to the Plaintiff.  The First Amendment of the Constitution protects the "right of the people peaceably to assemble."  The Freedom of Assembly Clause was incorporated against the states in DeJonge v. Oregon, 229 U.S. 353 (1937). By denying Plaintiff and all citizens of California the right to peaceably assemble, whether to protest or otherwise express themselves, Defendant is infringing on the Freedom of Assembly Clause.

113.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm his constitutional rights unless Defendants are enjoined from implementing and enforcing the Governors

Directive.

114.     Pursuant to 42 U.S.C. sections 1983 and 1988, Plaintiff are entitled to declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the governor's directive.

115.     Plaintiff found it necessary to engage the services of private counsel to vindicate them rights under the law. Plaintiff is therefore entitled to an award of attorney's fees pursuant to 42 U.S.C. section 1988.

## TENTH CAUSE OF ACTION

### Free Exercise Clause of First Amendment to U.S. Constitution

### (42 U.S.C. § 1983)

### (Against All Defendants)

116.     Plaintiff reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

117.     The Orders and Defendants' enforcement thereof violate the Free Speech Clause of the First Amendment, both facially and as applied to Plaintiff. 51. The Free Speech Clause was incorporated against the states in Gitlow v. New York, 268 U.S. 652 (1925) (dicta) and Stromberg v. California, 283 U.S. 359 (1931). 52. Under Defendants' Orders, demonstrations, rallies, and protests, are entirely prohibited.

118.     Plaintiff seeks to engage in protected speech in the form of a protest on the grounds of the San Diego County Offices.

119.     Defendants' imposition of the Orders is unreasonable and has a chilling effect on protected speech by outright banning all gatherings for the purpose of demonstrations, rallies, and protests. The Orders are unconstitutionally overbroad, and therefore void as a matter of law, both on their faces, and as it is applied.

120.     Plaintiff have no adequate remedy at law and will suffer serious and irreparable harm to its constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

121.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the

COMPLAINT

Orders.

122.    Plaintiff found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiff are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988

## ELEVENTH CAUSE OF ACTION

### Violation of First Amendment Right to Petition

### (42 U.S.C. § 1983)

### (By all Plaintiff against all Defendants)

123.    Plaintiff reallege all prior paragraphs of this complaint and incorporate the same herein by this reference.

124.    The Orders and Defendants' enforcement thereof violate the Petition Clause of the First Amendment both facially and as applied to Plaintiff. The Petition Clause was incorporated against the states in Edwards v. South Carolina, 372 U.S. 229, 83 S. Ct. 680 (1963).

125.    The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." Like other First Amendment rights, the right to petition is fundamental. The right is implicit in "[the] very idea of government, republican in form." United States v. Cruikshank, 92 U.S. 542 (1876) "The right to petition is cut from the same cloth as the other guarantees of that Amendment and is an assurance of a particular freedom of expression." McDonald v. Smith, 472 U.S. 479, 482, 105 S. Ct. 2787, 2789 (1985). In fact, "[t]he right to petition is in some sense the source of other fundamental rights, for petitions have provided a vital means for citizens to request recognition of new rights and to assert existing rights against the sovereign." Borough of Duryea v. Guarnieri, 564 U.S. 379, 397, 131 S. Ct. 2488, 2500 (2011)

126.    When a government practice restricts fundamental rights, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available. See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 16-17 (1973); Dunn v. Blumstein, 405 U.S. 330 (1972).

127.    Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders.

128.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

129.     Plaintiff found it necessary to engage the services of private counsel to vindicate them rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for a judgment as follows:

1. An order and judgment declaring that the State Order, facially and as applied to Plaintiff, violates the First, Fifth and Fourteenth Amendments to the U.S. Constitution an Article 1, Section 1, 4, 5 of the California Constitution.

2. An order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the State Order, any County or City order or otherwise interfering with Plaintiff ability to exercise his constitutional rights

3. Awarding reasonable attorney's fees, expenses, and costs of suit.

4. Granting such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand a jury trial.

DATED: May_____, 2020          **BARIC & ASSOCIATES**

By:_____

Steven D. Baric, Esq.

Attorneys for Plaintiff JD BOLS

26

COMPLAINT