UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JD BOLS,

                                    Plaintiff,

v.

GAVIN NEWSOM, in his official
capacity as Governor of California, et al.,

                                    Defendants.

Case No.:  3:20-cv-00873-BEN-BLM

**ORDER DENYING EX PARTE
APPLICATION FOR TEMPORARY
RESTRAINING ORDER**

**[Doc. No. 10.]**

This matter is before the Court on an *ex parte* Application for a Temporary Restraining Order ("TRO") of Plaintiff JD Bols to enjoin enforcement of Defendants' public health orders mandating the closure of non-essential businesses following the declaration of a State of Emergency to address the Coronavirus Disease 2019 ("COVID-19"). All Defendants have responded.[1]  For the following reasons, Plaintiff's application is DENIED.

---

[1]     The Complaint names the following as defendants: Gavin Newsom in his official capacity as the Governor of California; Xavier Becerra in his official capacity as the Attorney General of California; Sonia Y. Angell, M.D. in her official capacity as the State Public Health Officer; Kevin Faulconer in his official capacity as Mayor of the City of San Diego; Wilma J. Wooten, M.D. in her official capacity as Medical Officer for the County of San Diego; Nathan Fletcher, Kristen Gaspar, Jim Desmond, Greg Cox; and

1

# I. BACKGROUND

JD Bols is an individual residing and doing business in San Diego County, California.[2]  His Complaint asserts eleven federal and state constitutional challenges to Governor Newsom's emergency health directives in response to the COVID-19 pandemic.[3]  Plaintiff argues that the Governor's orders and the related county and city orders impinge upon his "civil rights and liberties by ordering generally: (1) unprecedented in American history shelter-in-place or stay-at-home orders; and (2) protocols effectively destroying so-called 'non-essential' businesses all across the State of California."[4]  *Id*. at 2.

Plaintiff argues*, inter alia*, that the orders unconstitutionally favor "essential" businesses (such as banks, medical offices, and grocery stores) over "non-essential" businesses (such as churches and salons) by forcing non-essential businesses to shut down

---

Dianne Jacob, all in their official capacities as members of the Sand Diego County Board of Supervisors; and William Gore in his official capacity as San Diego Sheriff.

[2]     Plaintiff JD Bols is a business owner who operates a commercial and residential rental property business as well as a citizen and resident of San Diego County.  Many of Plaintiff's commercial properties are rented to long-term tenants negatively affected by the Defendants' orders and which operate churches and beauty salons on his leased premises.  (Doc. No. 1 at 4.)

[3]     The Complaint includes eleven claims: (1) Viol. of the Fifth Amend. to the U.S. Const. (*Right to Travel*); (2) Viol. of the Fourteenth Amend. to the U.S. Const. (*Substantive and Procedural Due Process*); (3) Viol. of the Fourteenth Amend. to the U.S. Const. (*Equal Protection*); (4) Viol. of the Fifth Amend. to the U.S. Const. (*Takings*); (5) Viol. of Art. I, § 1 of the Cal. Const. (*Right to Liberty*); (6) Viol. of Art. I, § 7 of the Cal. Const. (*Due Process*); (7) Viol. of Art. I, § 19 of the Cal. Const. (*Takings*); (8) Viol. of § 8572 of the Cal. Gov't Code (*Commandeering Private Property or Personnel*); (9) Viol. of the First Amend. to the U.S. Const. (*Freedom of Assembly*); (10) Viol. of the First Amend. to the U.S. Const. (*Free Exercise Clause*); and (11) Viol. of the First Amend. to the U.S. Const. (*Right to Petition*).

[4]     According to the Complaint, "Defendants' Orders have caused widespread and catastrophic damage to the California economy through the government-mandated closure of not only Plaintiff's business, but millions of other 'Non-Essential' businesses across California.  These orders have had massive chilling effect on the free exercise of Plaintiff's personal constitutional rights as well."  *Id*. at 7.

2

1    *under threat of fine and incarceration*, while essential businesses continue to operate.

2    Moreover, the orders dictate that individuals who are not employees of essential businesses

3    must stay at home.   These restrictive health orders, Plaintiff argues, violate his federal and

4    state constitutional rights.  Consequently, Plaintiff seeks a TRO enjoining enforcement of

5    the Governor's emergency health orders and related mandates issued by the County's

6    Public Health Officer, Dr. Wilma Wooten, against non-essential businesses such as

7    churches and salons operated by Plaintiff's tenants.  Plaintiff also seeks to enjoy his right

8    to travel, assemble with others, and petition for a redress of grievances by protesting within

9    the city and specifically at the County Administration building, notwithstanding the stay-

10   at-home orders.   Plaintiff also argues that the ordered closure of his non-essential

11   businesses constitutes a taking for which the government is required to pay just

12   compensation.

## II. <u>LEGAL STANDARD</u>

14        A TRO is an "extraordinary remedy" that should only be awarded upon a clear

15   showing that the plaintiff is entitled to such relief.  *See Winter v. Nat. Res. Def. Council,*

16   *Inc.*, 555 U.S. 7, 22 (2008).  Ordinarily, the party seeking a TRO must establish: (1) a

17   likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary

18   relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction

19   is in the public interest.  *Id*. at 20.  Alternatively, he must demonstrate that "serious

20   questions going to the merits were raised and the balance of hardships tips sharply in the

21   plaintiff's favor," and that the other two *Winter* elements are met.  *Alliance for Wild*

22   *Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  The "[l]ikelihood of success

23   on the merits is the most important *Winter* Factor."  *Disney Enters., Inc. v. VidAngel, Inc.*,

24   869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks omitted).

## III. <u>DISCUSSION</u>

26        This case was filed only weeks ago.  At this point in the litigation, there has been

27   no trial, no testimony, and no evidentiary hearings.  To grant temporary injunctive relief

28   in ordinary times requires a strong likelihood of success on the merits.  But these are not

1  ordinary times which give rise to Plaintiff's Complaint.  Indeed, all of his claims for

2  relief arise from the intersection and conflict between executive orders for the health of

3  the citizenry as a whole and constitutional rights enjoyed by the individual citizen.  The

4  Constitution principally entrusts the safety and the health of the citizenry to the politically

5  accountable officials of state and local government.  *Jacobson v. Mass.*, 197 U.S. 11, 38

6  (1905).

7         After a trial on the merits, it may well be clear that the Defendant state and local

8  officials went too far or indelicately encroached on Plaintiff's individual liberties.

9  However, in the current posture of a request for a temporary restraining order -- while the

10  medical facts on the ground are still developing and officials are faced with imperfect

11  information upon which to actively design the public health response – federal court

12  intervention must be modest.  This is the teaching of the U.S. Supreme Court in *South*

13  *Bay United Pentecostal Church v. Newsom,* 504 U.S.__, 140 S. Ct. 1613, (May 29,

14  2020), and this Court is compelled to follow.  Concurring, Chief Justice Roberts explains

15  about the same health orders from the same officials in a similar case,

16         The precise question of when restrictions on particular social activities
17     should be lifted during the pandemic is a dynamic and fact-intensive matter
       subject to reasonable disagreement.  Our Constitution principally entrusts
18     the safety and the health of the people to the politically accountable officials
       of the States to guard and protect.  When those officials undertake to act in
19     areas fraught with medical and scientific uncertainties, their latitude must be
20     especially broad.  Where those broad limits are not exceeded, they should
       not be subject to second-guessing by an unelected federal judiciary, which
21     lacks the background, competence, and expertise to assess public health and
22     is not accountable to the people.
              That is especially true where, as here, when a party seeks emergency
23     relief in an interlocutory posture, while local officials are actively shaping
24     their response to changing facts on the ground.

25  *Id*. at 1613-14 (internal quotations and citations omitted).

26

27

28

                                              4

Applying *South Bay*, Plaintiff's Application for a TRO is denied.[5]

### IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's *ex parte* Application for a Temporary Restraining Order is

        **DENIED** without prejudice; and

2.      A *telephonic* Status Hearing is scheduled for July 13, 2020 at 10:30 a.m.

**IT IS SO ORDERED.**

Date: June 30, 2020

_____

**HON. ROGER T. BENITEZ**
United States District Judge

---

[5]      There are questions concerning Plaintiff's Article III standing for several of the eleven claims for relief. *See generally, Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (June 1, 2020) (discussing the requirements for Article III standing). There are also questions of Eleventh Amendment immunity for the state Defendants. These can be resolved in the ordinary course of litigation such as by motions filed under Federal Rules of Civil Procedure 12 and 56.

As to arguments that the case is rendered moot by virtue of more recent health orders, the Court disagrees. "A case becomes moot—and therefore no longer a case or controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (internal quotation marks omitted). However, "[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Id.* (quoting another source). The government's voluntary cessation of challenged conduct will result in mootness only if a stringent standard is satisfied: "A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (emphasis added). That standard is not satisfied here. Although the State has permitted some communities to advance through Stage 2 more quickly, the State is not constrained from later retuning to the more stringent restrictions which existed at the outset of the stay-at-home orders. Indeed, a return to such measures may be called for if there is a resurgence of the Covid-19 epidemic. *See Rosebrock*, 745 F.3d at 971 ("changes in ordinances or regulations will not necessarily render a case moot"); *id.* at 972 ("we are less inclined to find mootness where the 'new policy … could be easily abandoned or altered in the future.'") Put differently, this case appears to fall directly within the exception to the mootness doctrine for cases that are capable of repetition while evading review. *Doe v. Madison School Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999). Accordingly, the Court does not find that Plaintiff's claims are mooted by Defendants' voluntary cessation.