UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JD BOLS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California, et al.,<br><br>Defendants. | Case No.: 20cv873-BEN (BLM)<br><br>**ORDER Denying Motions to Dismiss**<br><br>**[Doc. Nos. 46, 48, 49, 69, 70]** |

The Plaintiffs filed a Second Amended Verified Complaint on November 9, 2020. The Complaint sets out seven claims for relief. Presently before the Court are the motions to dismiss of the State, County, and City defendants.[1]  All of the motions are denied.

---

[1] Several parties also request judicial notice be taken of numerous documents and government website postings.  (Request by state defendants filed Sept. 11, 2020 (Dkt # 46-2); request by county defendants filed Sept. 11, 2020 (Dkt # 48-2); request by city defendant filed Sept. 15, 2020 (Dkt # 49-2); request by state defendants filed Nov. 16, 2020 (Dkt # 57-1); request by county defendants filed Dec. 24, 2020 (Dkt # 69-2); request by city defendant filed Dec. 28, 2020 (Dkt # 70-2)).  Because evidence beyond the pleadings is not necessary to decide the motions to dismiss, the requests are denied.  *See e.g.*, *Pharm. Research & Manufacturers of Am. v. David*, No. 217cv02573 MCE KJN, 2021 WL 22473, at *7 (E.D. Cal. Jan. 4, 2021) (requests denied as unnecessary to reach decision); *In Re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020) ("A court is not required to take judicial notice of judicially noticeable information.").

## I. Background

### A. The Plaintiffs

Plaintiff JD Bols is a San Diego County resident and small business owner who leases commercial property. Many of Bols' San Diego County commercial properties are rented to tenants who operate churches and beauty salons. Plaintiff Amy Mullins-Boychak owns a family hair salon specializing in serving clients with special needs and autism. Plaintiff Leia Gadow operates a business in the beauty industry. Plaintiff Mandy Millus operates a beauty salon as a booth rental salon. Each have been subject to one or more of the defendants' shutdown orders.

### B. The Defendants

The Complaint names the following defendants: (1) Gavin Newsom in his official capacity as the Governor of California; (2) Xavier Becerra in his official capacity as the Attorney General of California; (3) Erica Pan, M.D., in her official capacity as the Director of the State Public Health Officer; (4) Kevin Faulconer in his official capacity as Mayor of San Diego (Faulconer has been recently replaced); (5) Wilma J. Wooten, M.D., in her official capacity as Medical Officer for the County of San Diego; (6) Nathan Fletcher in his official capacity as member of the San Diego Board of Supervisors; (7) Kristen Gaspar in her official capacity as a member of the San Diego Board of Supervisors; (8) Jim Desmond in his official capacity as a member of the San Diego Board of Supervisors; (9) Greg Cox in his official capacity as a member of the San Diego Board of Supervisors; (10) Dianne Jacob in her official capacity as a member of the San Diego County Board of Supervisors (Jacob has been recently replaced); and (11) William Gore in his official capacity as San Diego Sheriff.

## C. The Stay Home Orders[2]

On March 4, 2020, Governor Newsom proclaimed a State of Emergency due to a health crisis caused by the spread of SARS-CoV-2, the virus that causes COVID-19. According to the Centers for Disease Control ("CDC"), the virus is primarily spread from person to person such that a person can become infected by coming into close contact with a person who has COVID-19. Governor Newsom issued Executive Order N-33-20 (the first stay home order), directing all California residents to heed the State Public Health Officer's directive ordering all individuals living in the State of California to stay home or at their place of residence except for those working in essential industries. Californians working in essential industries were permitted to continue working. Plaintiffs' businesses were not deemed essential industries. At the outset, hair and nail salons were ordered closed. Months later they were permitted to re-open. On December 6, 2020, San Diego County non-essential indoor business operations (including hair and nail salons) were once again ordered closed. *South Bay United Pentacostal Church*, 2021 WL 222814 at *5 ("The Regional Stay at Home Order shutters many businesses that were previously allowed to operate with restrictions under Tier 1 of the Blueprint, such as outdoor dining, barbershops, and nail salons.").

## II. The Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008). When considering a Rule 12(b)(6) motion, the court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege conceivably unlawful conduct but must allege "enough facts to state a claim to relief that

---

[2] For a more complete history of California's COVID-19 stay home orders, *see South Bay United Pentacostal Church v. Newsom*, __ F.3d __, 2021 WL 222814 *1-5 (9th Cir. Jan. 22, 2021).

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**Mootness**

State Defendants argue that the claims are moot because now under the Blueprint for a Safer Economy, hair and nail salons may operate statewide, subject to other health and safety guidelines. Reply Brief in Support (filed Nov. 16, 2020) (Dkt. # 57) at 1 ("Under the Blueprint, hair and nail salons can remain open statewide. . . Plaintiffs fail to plausibly allege ongoing injury caused by State Defendants because, contrary to their allegations, the operative state health directives permit hair and nail salons to operate."). In the time since that argument was made, however, hair and nail salons once again received orders to close their businesses.[3] And on January 24, 2021, California officials again lifted the regional shutdown orders. *See e.g.,* www.sandiegouniontribune.com/news/california/story/2021-01-24/newsom-cancels-coronavirus-stay-at-home-order (last visited Jan. 26, 2021). In the process, the State Defendants' argument has lost some persuasive force. The recent events illustrate why there is a mootness exception for cases that are capable of repetition while evading review.

---

[3] On December 3, 2020, the State of California issued a Regional Stay at Home Order. The Regional Stay Home Order and a supplemental order, signed December 6, 2020, announced that the orders would go into effect at 11:59 PM the day after a region was determined to have less than 15% Intensive Care Unit availability. The supplemental order clarified retail operations and went into effect immediately. The order prohibits private gatherings of any size, closes sector operations except for critical infrastructure and retail, and requires 100% masking and physical distancing in all others. The order was supposed to last only three weeks. On December 29, 2020, the most recent December 3, 2020 closure order was extended indefinitely. As a result of these recent changes, hair and nail salons were to stay closed. *See* https://www.barbercosmo.ca.gov/licensees/new_stay_at_home.pdf. ("When a Regional Stay at Home Order is triggered because ICU capacity has dropped below 15%, salons, barber shops and personal care services (esthetics, manicuring and electrology) must close.").

"A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt,* 455 U.S. 478, 481 (1982) (per curiam)). However, there is an exception to the mootness doctrine for a case that is capable of repetition, yet evading review. "A dispute qualifies for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *United States v. Sanchez-Gomez,* 138 S. Ct. 1532, 1540 (2018) (quoting *Turner v. Rogers,* 564 U.S. 431, 439–440 (2011)). On the other hand, "[a] case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (emphasis added). That standard is not satisfied here. The Defendants are not constrained from enacting or re-enacting restrictions on plaintiffs and their businesses. Because the current shutdown orders demonstrate that the allegedly wrongful behavior can reasonably be expected to re-occur as health conditions wax and wane, the exception to mootness applies. Accordingly, the Court finds that Plaintiffs' claims are not moot.

## III. DISCUSSION

Plaintiffs set out seven claims for relief. One or more defendants move to dismiss each of the seven claims. Each claim is discussed in order.

### A. First Claim for Relief: Due Process

All Plaintiffs assert a due process claim under 42 U.S.C. § 1983 against the State Defendants Newsom, Becerra, and Pan, in their official capacities. The Plaintiffs assert the State Defendants have violated federal constitutional rights arising under both substantive due process and procedural due process theories.

"The Supreme Court has not specified the boundaries of the right to pursue a profession, but has identified it generally." *Engquist v. Oregon Dept. of Agr.*, 478 F.3d

985, 997 (9th Cir. 2007), *aff'd on other grounds sub nom. Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008). Plaintiffs' theory of substantive due process liability is that the stay-at-home orders unlawfully abridge their right to pursue an occupation. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41 (1915); *see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ("Without doubt, [the guarantee of liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.").

The Supreme Court recognizes that the Fourteenth Amendment's Due Process Clause includes a due process right to choose his or her field of employment. *Conn v. Gabbert,* 526 U.S. 286, 291–92 (1999) ("In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."); *Ry. Employees' Dep't v. Hanson,* 351 U.S. 225, 234 (1956) ("It is said that the right to work, which the Court has frequently included in the concept of 'liberty' within the meaning of the Due Process Clauses (see *Truax v. Raich*; *Takahashi v. Fish & Game Commission*) may not be denied by the Congress."); *Schware v. Bd. of Bar Exam'rs,* 353 U.S. 232, 238–39 (1957) ("A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); *Terrace v. Thompson,* 263 U.S. 197, 221 (1923) (reiterating that in *Truax*, "it was said that the right to work for a living in the common occupations of the community is a part of the freedom which it was the purpose

6

20cv873-BEN (BLM)

of the Fourteenth Amendment to secure."); *Dittman v. California,* 191 F.3d 1020, 1029 (9th Cir. 1999) ("In an early line of cases, the Supreme Court recognized 'that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment.' This court similarly has observed that 'it is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations.'") (citations omitted); *but see Best Supplement Guide, LLC v. Newsom,* No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at *5 (E.D. Cal. May 22, 2020) (denying TRO where gym owners asserted substantive due process right to pursue occupations in face of California stay home order); *McGhee v. City of Flagstaff, et al.*, No. CV-20-08081-PCT-GMS, 2020 WL 2308479, at *5 (D. Ariz. May 8, 2020) (rejecting substantive due process challenge to Arizona's stay home order).  Whether evidence at trial proves only a temporary interruption of Plaintiffs' occupations, or something more, remains to be decided.  However, this much is clear: Plaintiffs have adequately stated a claim upon which relief can be granted.  *Engquist*, 478 F.3d at 996 ("We hold that Engquist has stated a valid claim — a claim upon which relief can be granted — under substantive due process by alleging that Defendants' actions prevented her from pursuing her profession.").

State Defendants argue the contrary.  Without blushing, incredibly, State Defendants say that a person enjoys no fundamental constitutional right to work or support one's self.  They say neither the Supreme Court nor the Ninth Circuit has ever held that the right to pursue work is a fundamental right entitled to heightened constitutional scrutiny.  For this proposition, State Defendants say that the "*activity of doing business*" is not a fundamental liberty or property interest subject to heightened substantive due process protections, citing *College Savings Bank v. Florida Prepaid Postsecondary Education*, 527 U.S. 666, 675 (1999).  *College Savings Bank* decided only whether the federal Trademark Remedy Clarification Act, 106 Stat. 3567, forces a constitutionally permissible abrogation of state sovereign immunity or operates as an

invitation to waiver of such immunity. *Id.* at 669.  The plaintiff was a New Jersey chartered bank that sold certificates of deposit designed to finance college costs.  The defendant was an arm of the State of Florida that administered a tuition prepayment program.  The defendant allegedly made misrepresentations about its own program and plaintiff sued under §43 of the federal Lanham Act in federal court.  The State of Florida moved to dismiss asserting its sovereign immunity.  The Court concluded that the sovereign immunity of the State of Florida was neither abrogated nor voluntarily waived. *Id.* at 691.  The Court neither addressed the question of an individual's fundamental right to work nor mentioned the notion in passing.

State Defendants also rely on *Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004). *Sagana* is an odd decision on which to rely.  Bonifacio Sagana, the plaintiff in that case, was neither a citizen nor a resident of the United States.  Sagana was a nonresident alien who desired to work in the Commonwealth of the Northern Mariana Islands ("CNMI"). *Id.* at 735.  While the CNMI operates under a covenant with the United States, it is not one of the United States.  Regarding the right to work in the CNMI, the CNMI enacted the Nonresident Workers Act ("NWA"), 3 N. Mar. I. Code § 4411 *et seq.*, in 1983.  The NWA sets conditions on the hiring of nonresident workers like Sagana.  CNMI citizens are given a general preference for all jobs.  Employers who wish to hire nonresident workers must first notify the CNMI Department of Labor, which attempts to first place residents in the position.  The employer must also guarantee that at least ten percent of its workforce is comprised of resident workers.  3 N. Mar. I. Code § 4436(a).  *Sagana*, 384 F.3d 731, 734–35.  As with the Supreme Court in *College Savings Bank*, the Ninth Circuit in *Sagana* was not presented with the question of whether an individual citizen residing in the United States enjoys a fundamental right to work in a common occupation protected by the United States Constitution.

If State Defendants are correct that a person has no fundamental right to work, then there is little left for a court to do.  The modicum of judicial review that applies to laws infringing on non-fundamental rights is limited.  With the Constitution out of the way, the

State Defendants argue that this Court need only ask whether the government *could* have a legitimate reason for ordering hair dressers and nail salonists to close their businesses. That, in turn, would be an easy thing for State Defendants to prove, although it would require *some* proof.  Because even if State Defendants' position is correct, some evidence is required, dismissal at this stage is unwarranted.  To be clear, however, this Court concludes that a person's right to work for a living in one of the common occupations of the community is a core personal freedom guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments.

In addition to a substantive due process right to work, Plaintiffs argue that State Defendants also violated their rights to procedural due process.  Plaintiffs argue that State Defendants' various shutdown orders were issued without notice or an adequate hearing.  They also argue that the orders are arbitrary and irrational exercises of executive power.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  And the Supreme Court holds that "some form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333.

State Defendants argue that the Ninth Circuit has specifically rejected the notion that the Due Process Clause requires this type of pre-deprivation process before enacting and enforcing laws of general applicability.  State Defendants charge that it is well-settled that "general notice as provided by law is sufficient" for "[g]overnmental decisions which affect large areas and are not directed to one or a few individuals." *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995).  State Defendants say that the shutdown orders apply to all businesses across the state and Plaintiffs were not targeted in any way. *See Best Supplement Guide,* WL 2615022 at *5 (no legal process required under due process clause where State and County orders prohibited operation of all gyms equally).

Accordingly, State Defendants argue that the procedural due process claims should be dismissed.

This Court disagrees. *Halverson* recognized that ordinarily due process requires notice and an opportunity for a hearing prior to the deprivation of a significant property interest. 42 F.3d at 1260. It also stated an exception. "However, 'when the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.'" 42 F.3d at 1261; *see also e.g.*, *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012) (affirming summary judgment explaining "[t]he City Council's enactment of the various moratorium ordinances were lawful legislative acts…."). The shutdown orders of which Plaintiffs complain, however, are not legislative enactments and they do not appear to be legislative in nature. "Of course, public decision-makers cannot sidestep the dictates of due process by simply giving their actions a legislative moniker. Our cases have been careful to focus on the 'character of the action, rather than its label,' avoiding 'formalistic distinctions between legislative and adjudicatory or administrative government actions.'" *Hotel & Motel Assn. of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003). If the shutdown orders are, as they appear to be, pure executive action, then general notice may not suffice. In any event, it is a subject to be decided upon evidence or the lack of a genuine issue of fact, as was the case in *Halverson*. 42 F.3d at 1261 (deciding claim of procedural due process on summary judgment). The motion to dismiss this claim is denied.

**B. Second Claim for Relief: Equal Protection**

Plaintiffs allege State Defendants are violating their constitutional right to equal protection under the law because State Defendants' intentionally and arbitrarily treat essential and non-essential businesses differently. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all

persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

State Defendants argue for dismissal. They argue that Plaintiffs are not members of a suspect class, and the orders do not jeopardize the exercise of a fundamental right, citing *Six v. Newsom*, 462 F. Supp. 3d 1060, 1072 (C.D. Cal. 2020) ("California's essential/non-essential classification does not disadvantage a suspect class") and *Professional Beauty Federation of California v. Newsom*, Case No. 2:20-cv-04275-RGK-A, 2020 WL 3056126, at *7 (C.D. Cal. June 8, 2020). *Professional Beauty* looked at the question only in the narrow light of a request for a temporary restraining order judged under the *Jacobson* standard. In that context, the court found that the plaintiffs had not shown "beyond all question, a plain, palpable invasion of the right to equal protection." *Id.* In the same way, *Six* also looked at the question only in the context of a temporary restraining order under the *Jacobson* standard. 462 F. Supp. 3d at 1072-73. The question here is not as strained. It is only whether the Plaintiffs have stated a cognizable claim for relief. They have. Later, at trial, Plaintiffs will have to prove that the stay home orders are arbitrary or irrational as applied to them.

State Defendants claim that the shutdown orders are not subject to strict scrutiny because they are neutral, generally applicable regulations that do not implicate fundamental rights, and are therefore subject to rational basis review, citing *FCC v. Beach Commc'ns, Inc.* 508 U.S. 307, 313 (1993) and *Cross Culture Christian Center v. Newsom*, 445 F. Supp. 3d 758, 770 (E.D. Cal. 2020). *Cross Culture*, like the decisions in *Six* and *Professional Beauty*, was a decision on a request for a temporary restraining order judged under the *Jacobson* standard. It was not a decision on whether the plaintiff had stated a cognizable claim for relief under the Equal Protection Clause. Moreover, *Cross Culture* addressed a free exercise claim and a Religious Land Use and Institutionalized Persons Act claim under 42 U.S.C. 2000cc(a)(1), not an Equal Protection claim. *Beach Communications* addressed the constitutionality of the federal Cable Communications Policy Act of 1984 to establish a national framework for

regulating cable television.  There the Court found the statute constitutional but relied heavily on the fact that the statute was produced by Congress and applied a rational basis test.  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313.  With no constitutional right to a government-issued cable franchise, the Cable Communications Policy Act was judged only on rational-basis review.  *Id.* at 314.  In contrast, the California shutdown orders are not the product of a legislative act and the shutdown orders do infringe on the fundamental constitutional right to use one's labor in a common occupation.  While it may be that State Defendants are ultimately correct that the shutdown orders do not offend the Equal Protection Clause, that determination will have to wait for evidence to be presented and examined either on summary judgment or at a trial on the merits.  The motion to dismiss is denied.

### C. Third Claim for Relief: Contracts Clause

In this claim, Plaintiff Bols claims County and City Defendants have impaired his rental contracts by issuing moratoriums on evictions of real estate tenants that fail to pay rent.  Bols seeks relief through 42 U.S.C. § 1983 asserting the moratorium orders violate Article 1, § 10 of the U.S. Constitution.

County Defendants move to dismiss because Bols has not specified whether any of his 20 commercial properties are in the unincorporated part of San Diego County.  Because it is the unincorporated part of the county to which the county eviction moratorium applies, County Defendants ask to have this claim dismissed.  It is likely that this claim and its defense can be disposed of quickly, once the parties have the facts.  However, this case is still at the pleading stage.  Bols has alleged ownership of almost 20 revenue generating properties in the City and County of San Diego.  Second Amended Complaint at ¶ 66.  This allegation is sufficient to plausibly claim that at least one

property is affected by the eviction moratorium issued by County Defendants. The motion to dismiss by County Defendants is denied.

The City Mayor moves to dismiss arguing Bols lacks standing. The City Mayor argues that the city's eviction moratorium was in effect only from March 25, 2020 to September 30, 2020, and that most of that time Bols' injury, if any, was caused by a temporary change in Court Rules made by the California Judicial Council. According to the Mayor, those Judicial Council rules precluded unlawful detainer actions from being brought in the state courts and were in effect from April 6, 2020 through September 1, 2020. Thus, the argument goes, the city moratorium had no impact except for 29 days in September and 11 days between March and April. But even as little as 29 days is a sufficient time to impose an actual injury, and because another moratorium may be imposed at any time, Bols has standing and his claim is not moot. *See e.g., El Papel LLC. v. Inslee*, No. 20cv1323 RAJ JRC, 2020 WL 8024348, at *5 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted* (W.D. Wash. Jan. 8, 2021) ("Although the tenant can be evicted under the CDC moratorium, she cannot be evicted under the moratoria at issue here. Plaintiff [landlord]'s injury would be redressable by this litigation and he -- and hence all plaintiffs --  have standing to bring this lawsuit [under the Contracts and Takings Clauses]."). The motion to dismiss by the City Mayor Defendant is denied.

### D. Fourth Claim for Relief: Takings Clause

Plaintiff Bols contends that the moratoria of County Defendants and the City Mayor have resulted in his unconstitutional deprivation of "all economically beneficial use" of his business property (rental income) and the eviction moratorium has prevented re-renting of the properties. Plaintiff Bols alleges both a regulatory taking under *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 124 (1978), and a physical taking under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432-33 (1982). Plaintiff Bols has sufficiently set out a cognizable Fifth Amendment takings claim. "The Fifth Amendment does not proscribe the taking of property; it

proscribes taking without just compensation." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), o*verruled on other grounds by Knick v. Twp. Of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019).  Here, Plaintiff Bols seeks declaratory and injunctive relief and damages for his takings claims.  If the eviction moratoria proves to have inflicted a "plain, palpable invasion" of his Fifth Amendment rights, Plaintiff may be entitled to damages for a past taking and injunctive relief against future uncompensated takings.

County Defendants principally raise again the argument that Bols has not identified any particular rental property located in the unincorporated portion of San Diego County. They argue he has not identified rents taken by virtue of the county eviction moratorium. Once again, that fact question can be determined quickly later when evidence is required by summary judgment or trial.  At this stage, however, County Defendants' motion to dismiss is denied.

The City Mayor argues, as before, that Bols lacks standing because any injury he suffered would be traceable to the Judicial Council's decision to not hear unlawful detainer actions rather than traceable to the city's eviction moratorium.  For the same reasons as before, the Court disagrees.  The City Mayor's motion to dismiss is denied.

**E.  Fifth Claim for Relief: Due Process**

Plaintiff Bols alleges County and City Mayor Defendants deprived him of both substantive and procedural due process in violation of the Fourteenth Amendment.

County Defendants specifically join and adopt the arguments pushed forward by the State Defendants.  For the same reasons already discussed, Bols has sufficiently set forth a plausible claim upon which relief can be granted.

The City Mayor, as before, argues that Bols lacks standing because any injury is not the result of the city's actions but the result of the Judicial Council's suspension of unlawful detainer hearings.  As before, the Court disagrees and finds Bols has standing and denies the City Mayor's motion to dismiss.

### F. Sixth Claim for Relief: Takings Clause

The sixth claim describes a Takings Clause claim against the City and County Defendants brought by Plaintiffs Mullins-Boychak, Gadow, and Millus. County Defendants point to a technicality. They say that the same claim was labeled as the fourth claim for relief in the First Amended Complaint. They say that the State Defendants urged a comprehensive motion to dismiss the fourth claim on the merits. They say that they joined that portion of the State Defendants' motion. Dkt # 48-1, at 5 ("The County Defendants join section II(B)(4) of the argument section of the State Defendants' Memorandum of Points and Authorities. The arguments set forth in that section are equally applicable to the County Defendants."). They note that Plaintiffs' opposition brief does not address the State Defendants' arguments. No doubt, that was because the Plaintiffs withdrew their Takings Clause claim against the State Defendants in their more recent Second Amended Complaint. Nevertheless, County Defendants say that the omission in the opposition means that Plaintiffs have implicitly admitted the sixth claim for relief lacks merit. Consequently, dismissal of the sixth claim for relief is urged by County Defendants.

Federal courts favor resolution of claims on the merits. Plaintiffs have alleged that their hair and nail salons have been closed by orders of County and City Defendants. Plaintiffs have alleged that the shutdowns have taken away their occupations and businesses for the public good without compensation. They claim they have suffered an uncompensated taking in the past and continue to suffer an uncompensated taking. This is sufficient to meet the FRCP Rule 8 standard of a short plain statement of the claim and plausibility.

Neither the Federal Rules of Civil Procedure nor the Court's local rules approve of one party simply joining another party's briefing. While it makes sense to join another party's argument sometimes, here the parties originally proffering the Takings Clause arguments no longer have an interest in the arguments because the Plaintiffs have withdrawn the claim. The result is County Defendants' motion to dismiss the sixth claim

for relief relies on a dangling, orphaned argument. Whether orphan arguments can still carry the weight County Defendants place upon them is an open question, but the question need not be answered today. Even judged against the orphaned arguments (temporary takings and incomplete takings not compensable; takings permissible under doctrine of necessity) Plaintiffs Mullins-Boychak, Gadow, and Millus, have at least sufficiently stated a plausible claim for relief. County Defendants' motion to dismiss is denied.

### G.  Seventh Claim for Relief: California Constitution

All Plaintiffs claim County and City Defendants have violated their rights under Article 1, § 19 of the California Constitution, which provides,

> (a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.

Plaintiffs assert that this provision of the constitution provides a property owner a right of just compensation when property is taken for public use. Plaintiffs claim that the shutdown orders of County and City Defendants have forced them to cease conducting lawful business on their properties and they have not been paid just compensation. County Defendants re-urge their technicality argument. They also re-urge the argument that Bols has not identified a property taken that lies within the unincorporated portion of San Diego County. As before, the Court declines to adopt either of these arguments at this stage of the litigation.

County Defendants also bring a new argument. They say the claim is barred by the Eleventh Amendment. The Eleventh Amendment protects states from suit in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Specifically, the Eleventh Amendment protects states and state officials from a Takings

Clause claim in federal court. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) ("We therefore conclude that the Eleventh Amendment bars reverse condemnation actions brought in federal court against state officials in their official capacities.").[4] "Under the *Ex parte Young* exception to that Eleventh Amendment bar, a party may seek prospective injunctive relief against an individual state officer in her official capacity. However, the *Young* exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality as the defendant." *Doe v. Regents of the Univ. of California*, 891 F.3d 1147, 1153 (9th Cir. 2018) (citations omitted). Of course, in their Second Amended Complaint, Plaintiffs are no longer suing the state or state officials for violating the state constitution.

Undeterred, County Defendants maintain that the seventh claim for relief is "in substance" an attack on the state's public health orders. On this basis they claim Eleventh Amendment immunity. Perhaps County Defendants' orders are, in fact, in substance the same as the state's health orders. Nevertheless, the Eleventh Amendment does not protect orders or directives. It affords immunity in federal courts to the state itself and state officials acting for the state. The seventh claim for relief in the Second Amended Complaint, in contrast, is aimed at county and city officials acting for the county and city.

County Defendants remonstrate that it does not matter that they are county rather than state officials because their official hands are tied. They say that the county health orders have expressly incorporated the state guidance. They say that the state guidance

---

[4] Because of Eleventh Amendment immunity, a state may take a person's property for the public good. If it does so without paying compensation, the former property owner may not come to federal court to vindicate his federal constitutional rights under the Takings Clause of the Fifth Amendment. Instead, that person is left with no other option but to litigate his claim against the state in the state's own courts. *Seven Up Pete*, 423 F.3d at 956. Perhaps future decisions will deal more kindly with those whose property has been taken and provide the independent and disinterested forum of a federal court as is done for many other constitutional violations.

does not afford counties discretion to adopt less restrictive measures or to relax state restrictions. They say that state law does not permit counties to opt out of enforcement. So, they say, a state constitutional takings claim against them is really a claim against a state order. Thus, the argument goes that although they are county officials, they are entitled to the state's immunity because they are acting like state officials enforcing county orders that are like state orders. They rely on *Porter v. Gore*, 354 F. Supp. 3d 1162, 1180 (S.D. Cal. 2018) (dismissing County Sheriff Gore on Eleventh Amendment grounds).

*Porter* offers a fresh interpretation of Eleventh Amendment doctrine. But *Porter* is different from this case in one important way. In *Porter*, the plaintiff sued the county sheriff for directly enforcing a state law, California Vehicle Code §§ 27000 and 27001. Ms. Porter was issued a citation for violating these vehicle horn honking statutes while honking at a political protest at a U.S. Congressman's office. *Porter* reasoned that while plaintiff had named a county official as a defendant, the county official was in essence a state official enforcing a state statute. Because a federal court judgment invalidating the state statute would operate against the whole state, *Porter* concluded that the county official enjoys the protection of the Eleventh Amendment. In the normal case, neither counties nor municipalities enjoy Eleventh Amendment immunity even though they exercise a slice of state power. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979) ("[T]he Court has consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'").

*Porter* also regarded the claim for relief against the county sheriff and the state statute to be "artful pleading." 354 F. Supp 3d at 1180. Here, there is no artful pleading. County Defendants are sued as county officials for exercising their county powers to issue orders limited to the unincorporated portions of San Diego County. A California county is not simply an arm of the State of California. County officials here are not alleged to be simply enforcing existing state law, and a federal court judgment would not

operate to invalidate a state law.  Instead, the plaintiffs here claim that the county officials issue orders that violate the state constitution.  The Court finds that County Defendants are county officials not entitled to Eleventh Amendment immunity from suit in federal court.  Accordingly, County Defendants' motion to dismiss is denied.

The City Mayor does not seek dismissal on Eleventh Amendment grounds.

### H.  Wooten and Gore's Separate Motion to Dismiss Claims 3 & 5

County Defendants Wooten and Gore also move to dismiss the third and fifth claims for relief because there are no allegations that they were involved in the eviction moratorium.  *See* Motion of County Defendants to Dismiss (filed Dec. 24, 2020), at 7-8.  The motion is misdirected.  County Defendants Wooten and Gore are not dismissed from claim three because Wooten allegedly has been involved in fashioning the county shutdown orders and Gore allegedly is in charge of enforcing the orders that allegedly interfere with Bols' leasing contracts.  Similarly, claim five alleges a denial of due process encompassing more than just the eviction moratorium.  Wooten allegedly has been involved in fashioning the county shutdown orders that are alleged to deprive Bols of due process and Gore allegedly is in charge of enforcing those orders.  That neither was involved in the imposition of the eviction moratorium is of no moment.  Therefore, the motion to dismiss as to claim five is also denied.

## V.  CONCLUSION

All motions to dismiss are denied.

**IT IS SO ORDERED.**

Date: January 26, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge