1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  JD BOLS, | Case No.:  3:20-cv-873-BTM-BLM |
| 12                    Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS FOR** |
| 13  v. | **SUMMARY JUDGMENT AND DENYING COUNTY DEFENDANTS' MOTION FOR** |
| 14  GAVIN NEWSOM, in his official | **SANCTIONS** |
| 15  capacity as Governor of California; XAVIER BECERRA, in his official | **[ECF NOS. 114, 128, 129, 130]** |

11  JD BOLS,

                    Plaintiff,

v.

GAVIN NEWSOM, in his official capacity as Governor of California; XAVIER BECERRA, in his official capacity as the Attorney General of California; SONIA Y. ANGELL, M.D., in her official capacity as the director of State Public Health Office; KEVIN FAULCONER, in his official capacity as Mayor of San Diego; WILMA J. WOOTEN, M.D. M.P.H., in her official capacity as Medical Officer for the County of San Diego; NATHAN FLETCHER, in his official capacity as member of the San Diego Board of Supervisors; KRISTEN GASPAR, in her official capacity as a member of the San Diego Board of Supervisors; JIM DESMOND, in his official capacity as a member of the San Diego Board of

Case No.:  3:20-cv-873-BTM-BLM

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING COUNTY DEFENDANTS' MOTION FOR SANCTIONS**

**[ECF NOS. 114, 128, 129, 130]**

Supervisors; GREG COX, in his official capacity as a member of the San Diego Board of Supervisors; DIANNE JACOB, in her official capacity as a member of the San Diego County Board of Supervisors; WILLIAM GORE, in his official capacity as San Diego Sheriff; ERICA PAN M.D., in her official capacity as the Director of State Public Health; TODD GLORIA, in his official capacity as Mayor of San Diego,

Defendants.

The State Defendants[1], County Defendants[2], and the Mayor of San Diego have each filed motions for summary judgment. (ECF Nos. 128, 129, 130.) The County Defendants have also filed a motion for sanctions. (ECF No. 114.) Pursuant to Civil Local Rule 7.1(d)(1), the Court finds it appropriate to determine the motions without oral argument. The Court **GRANTS** the motions for summary judgment. The Court **DENIES** the County Defendants' motion for sanctions.

## I.   <u>**BACKGROUND**[3]</u>

The Court finds it unnecessary to restate well known facts regarding the

---

[1] The State Defendants consist of Gavin Newsom, in his official capacity as Governor of California, Rob Bonta, in his official capacity as the Attorney General of California, and Tomas Aragon, M.D., Dr. P.H., in his official capacities as the Director of the California Department of Public Health and State Public Health Officer. (ECF No. 128.)

[2] The County Defendants consist of Wilma J. Wooten, M.D., M.P.H., in her official capacity as Medical Officer for the County of San Diego, Nathan Fletcher, Jim Desmond, Joel Anderson, Nora Vargas and Terra Lawson-Remer, in their official capacities as Members of the San Diego County Board of Supervisors, and William Gore, in his official capacity as San Diego County Sheriff. (ECF No. 130.)

[3] Defendants request judicial notice of various documents related to the COVID-19 pandemic, including government orders issued in response to the pandemic. (ECF Nos. 128-2, 129-4, 130-8). The requests for judicial notice are **GRANTED**, as the documents are in the public record and subject to judicial notice under Federal Rule of Evidence 201. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("under Fed. R. Evid. 201, a court may take judicial notice of matters of public record") (internal quotation marks omitted).

COVID-19 pandemic and its impact on society, and therefore adopts the relevant portions of the summaries of the COVID-19 pandemic and resulting government restrictions detailed in *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128 (9th Cir. 2021), and *Tandon v. Newsom*, 517 F. Supp. 3d 922, 932 (N.D. Cal. 2021).

A. <u>The State's Orders</u>

On March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, which stated that "all residents are directed to immediately heed the current State public health directives," and "ordere[d] all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." (ECF No. 128-7, Exh. 4.) On May 4, 2020, the Governor issued Executive Order N-60-20, which stated that "[a]ll residents are directed to continue to obey State public health directives," and directed the State Public Health Officer "to establish criteria and procedures . . . to determine whether and how particular local jurisdictions may implement public health measures that depart from the statewide directives of the State Public Health Officer." (ECF No. 128-9, Exh. 6.) On July 13, 2020, the California Department of Public Health ("CDPH") issued a statewide public health officer order closing the indoor operations of certain businesses, including hair salons, if they were located in counties that appeared on the CDPH's County Monitoring List. (ECF No. 128-13, Exh. 10.) On August 28, 2020, CDPH issued another statewide public health officer order, establishing criteria for a tiered system of reopening businesses. (ECF No. 128-14, Exh. 11.) On August 31, 2020, the Blueprint for a Safer Economy went into effect. (ECF No. 128-15, Exh. 12.) On December 3, 2020, CDPH issued a regional stay at home order, which took effect on December 5, 2020, and applied to regions with less than 15% ICU bed capacity. (ECF No. 128-17, Exh. 14.) The order stated that "[a]ll individuals living in the Region shall

stay home or at their place of residence except as necessary to conduct activities associated with operation, maintenance, or usage of critical infrastructure." (*Id.*) On January 25, 2021, CDPH ended the regional stay at home order, allowing all counties to return to operating under the Blueprint for a Safer Economy. (ECF No, 128, Exh. 15.) On June 11, 2021, Governor Newsom issued Executive Order N-07-21, which went into effect on June 15, 2021, and stated that (1) "Executive Order N-33-20, issued on March 19, 2020, setting forth the Stay-at-Home Order is hereby rescinded" and (2) "Executive Order N-60-20, issued on May 4, 2020, directing the State Public Health Officer to issue a risk-based framework for reopening the economy, and all restrictions on businesses and activities deriving from that framework, including all aspects of the Blueprint for a Safer Economy, is hereby rescinded." (ECF No. 128-25, Exh. 22.)

## B. The County's Orders

On March 12, 2020, the County of San Diego's Public Health Officer, Wilma J. Wooten, issued an order of the health officer, which went into effect on March 13, 2020, and placed restrictions on large gatherings. (ECF No. 130-2, Exh. B.) On March 29, 2020, the County of San Diego's Public Health Officer issued an order of the health officer and emergency regulations, which incorporated the terms of Governor Newsom's Executive Order N-33-20. (ECF No. 130-2, Exh. C.) On May 6, 2021, the County of San Diego's Public Health Officer issued an order of the health officer and emergency regulations, which stated that "[a]ll persons shall comply with applicable State orders, regulations, and guidance regarding COVID-19 prevention," and ordered that all "non-essential businesses" remain closed for the duration of the order. (*See* San Diego Public Health Order Effective Date 05.06.21, https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/covid19PHOrders/PUBLIC_HEALTH_ORDER_EFFECTIVE_DATE_05.06.21_EXECUTED_DATE_05.06.21_SUPERSEDED.pdf). On June 14, 2021,

the County of San Diego's Public Health Officer issued a limited order of the health officer, which went into effect on June 15, 2021, and stated that the "the Order of the Health Officer and Emergency Regulations, dated May 6, 2021, and any other Health Officer orders related to COVID-19 shall expire," with certain exceptions related to the quarantining of individuals exposed to COVID-19. (*See* San Diego Public Health Order Effective Date 06.15.21, https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/HealthOfficerOrderCOVID19.pdf).

On March 24, 2020, the Board of Supervisors of the County of San Diego passed Resolution No. 20-027, which prevented landlords from evicting tenants who were unable to pay rent due to financial impacts related to COVID-19. (ECF No. 130-7, Exh. 14.) The temporary eviction moratorium remained in effect until May 31, 2020 and applied to the unincorporated areas of the County of San Diego. (*Id.*) On June 2, 2020, the Board of Supervisors of the County of San Diego passed Resolution No. 20-066, which extended the temporary eviction moratorium until June 30, 2020. (ECF No. 130-7, Exh. 15.)

### C. The City's Orders

On March 16, 2020, the Mayor of San Diego, Kevin Faulconer, issued Executive Order No. 2020-1, which stated that "[a]ll bars, adult entertainment establishments, and nightclubs in the City of San Diego shall be closed to the public and all restaurants and business establishments that serve food in the City of San Diego shall be prohibited from serving food and beverage for consumption on premises" and expressly exempted from the order cafeterias, commissaries, and restaurants located within hospitals, skilled nursing facilities, and other healthcare facilities, grocery stores, pharmacies, and food banks. (ECF No. 129-3, Exh. 1.) On March 25, 2020, the Mayor of San Diego and the San Diego City Council adopted Emergency Ordinance No. 21177, which established a temporary moratorium on evictions for nonpayment of rent by tenants in the City

of San Diego who were directly impacted by COVID-19 and complied with certain procedural requirements detailed in the emergency ordinance. (ECF No. 129-3, Exh. 2.) On March 30, 2020, the Mayor of San Diego issued Executive Order No. 2020-2, which extended the effect of Executive Order No. 2020-1 to April 30, 2020 and ordered that all San Diego City landlords comply with Emergency Ordinance No. 21177. (ECF No. 129-3, Exh. 3.)

D. Plaintiffs' Lawsuit

On November 9, 2020, Plaintiffs JD Bols, Amy Mullins-Boychak, Mandy Millius, and Leia Gadow filed a second amended complaint challenging the Defendants' various orders related to the COVID-19 pandemic. (ECF No. 55.) Plaintiffs allege that JD Bols is a landlord to several businesses in the County and City of San Diego, that Amy Mullins-Boychak owns and operates a hair salon in the County and City of San Diego, that Mandy Millius owns and operates a hair salon in the County and City of San Diego, and that Leia Gadow owns and operates a nail salon in the County and City of San Diego. (ECF No. 55 at 5.) On August 18, 2021, the Court granted a joint motion to voluntarily dismiss with prejudice all claims and causes of action alleged by Plaintiffs Mandy Millius and Leia Gadow. (ECF No. 110.)

## II.   **STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of

establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

### A. The State Defendants

The remaining Plaintiffs, JD Bols and Amy Mullins-Boychak, allege that the State Defendants' orders, specifically Governor Newsom's Executive Order N-33-20, violated their rights under the Due Process and Equal Protection clauses by forcing their businesses to close down. (ECF No. 55 at 2, 18-21.) Plaintiffs specifically request injunctive and declaratory relief against the State Defendants. (*Id.* at 33.) The State Defendants argue that summary judgement should be granted in their favor because Plaintiffs' claims for injunctive and declaratory relief are moot, because the challenged restrictions have been rescinded. (*See* ECF No. 128-1 at 10.)

"A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted). "[A]n actual controversy must exist not only at the time the complaint is filed, but through all

stages of the litigation." *Id.* at 90–91 (internal quotation marks omitted). "[T]o avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show that the policy has adversely affected and continues to affect a present interest." *Bayer v. Neiman Marcus Grp.*, Inc., 861 F.3d 853, 868 (9th Cir. 2017) (internal quotation marks omitted). "[A] declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Id.* "The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). However, "[t]he government's change of policy presents a special circumstance in the world of mootness. . . . unlike in the case of a private party, we presume the government is acting in good faith." *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). There is also an "exception to the mootness doctrine for a controversy that is capable of repetition, yet evading review." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018). "A dispute qualifies for that exception only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* (internal quotation marks omitted).

On June 11, 2021, Governor Newsom issued Executive Order N-07-21, which went into effect on June 15, 2021, and stated that (1) "Executive Order N-33-20, issued on March 19, 2020, setting forth the Stay-at-Home Order is hereby rescinded" and (2) "Executive Order N-60-20, issued on May 4, 2020, directing the State Public Health Officer to issue a risk-based framework for reopening the economy, and all restrictions on businesses and activities deriving from that framework, including all aspects of the Blueprint for a Safer Economy, is hereby

rescinded." (ECF No. 128-25, Exh. 22.) The order explained that "since March 2020, the State has taken decisive and meaningful actions to reduce the spread and mitigate the impacts of COVID-19," that "the effective actions of Californians over the past fifteen months have successfully curbed the spread of COVID-19, resulting in dramatically lower disease prevalence and death in the State," that "as of June 9, 2021, 54.3% of eligible Californians have received a full course of COVID-19 vaccination, raising the level of overall immunity in the State," that "the State continues to promote and facilitate vaccination of all eligible Californians," and that "given the current outlook, it is appropriate to reevaluate existing public health directives to allow for a full reopening of California while maintaining caution and vigilance as California continues to increase vaccination rates and monitor COVID-19 variants." (*Id.*) Plaintiffs argue that the mootness exception applies because "the allegedly wrongful behavior can reasonably be expected to re-occur as health conditions wax and wane." (ECF No. 139 at 12.) The Court finds that Plaintiffs' claims against the State Defendants are moot. *See Best Supplement Guide, LLC v. Newsom*, No. 20-17362, 2022 WL 2703404, at *1 (9th Cir. July 12, 2022) ("Because Plaintiffs' request for declaratory and injunctive relief depends on the mere possibility that California might again shut down businesses, all claims against the state defendants [based on challenges to state public health orders] are now moot.") (internal quotation marks omitted); *Brach v. Newsom*, 38 F.4th 6, 11–12, 15 (9th Cir. 2022) ("This is a classic case in which, due to intervening events, there is no longer a live controversy necessary for Article III jurisdiction. Nor is there any effective relief that can be granted by the court. . . . Governor Newsom has rescinded the challenged executive orders, and the 2020–21 Reopening Framework has been revoked. . . . Bottom line: there is no longer any state order for the court to declare unconstitutional or to enjoin. . . .Neither [the voluntary cessation nor the capable of repetition yet evading review] exception saves their case. The dramatic changes from the early days of the

pandemic . . . have fundamentally altered the character of this dispute. We join the numerous other circuit courts across the country that have recently dismissed as moot similar challenges to early pandemic restrictions. . . The challenged orders have long since been rescinded . . . and the trajectory of the pandemic has been altered by the introduction of vaccines . . . medical evidence of the effect of vaccines, and expanded treatment options."); *Pine Valley House Resort, LLC v. Newsom*, 2022 WL 747729, at *8 (S.D. Cal. Mar. 10, 2022) (dismissing challenges to state shut down orders as moot because "the restrictions have been rescinded and, despite new waves of infection caused by new variants, the restrictions have not been reinstated"). Accordingly, the Court **GRANTS** the State Defendants' motion for summary judgment.[4]

## B. The County Defendants

Plaintiff Bols alleges the following causes of action against the County Defendants: (1) violation of the Contracts Clause; (2) uncompensated takings; (3) violation of his Due Process rights; and (4) violation of his right to liberty under the California Constitution based on uncompensated takings. (ECF No. 55 at 21-33.) Plaintiff Mullins-Boychak alleges the following causes of action against the County Defendants: (1) uncompensated takings against the County Defendants; and (2) violation of her right to liberty under the California Constitution based on uncompensated takings. (*Id.* at 30-33.)

"The Fifth Amendment's Takings Clause prohibits the taking of private property for public use, without just compensation. A Takings Clause claim requires proof that the plaintiff possesses a property interest that is constitutionally protected." *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1223 (9th Cir. 2018) (internal citation and quotation marks omitted). As to Plaintiff

---

[4] Because the Court finds that Plaintiffs' claims against the State Defendants are moot, the Court does not address the State Defendants' remaining arguments.

Mullins-Boychak, the County Defendants argue that the temporary closure of Mullins-Boychuak's hair salon due to COVID-19 restrictions cannot act as uncompensated takings. The Court agrees. *See Metroflex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976, 982 (S.D. Cal. 2021) ("District courts have consistently rejected business owners' claims that COVID-related restrictions constitute either a per se taking or a partial taking under *Penn Central*."); *Tatoma, Inc. v. Newsom*, 2022 WL 686965, at *5 (S.D. Cal. Mar. 8, 2022) ("Every federal court in California has held that COVID-19 health orders restricting businesses are not total or regulatory takings."); *Mission Fitness Ctr., LLC v. Newsom*, 2021 WL 1856552, at *10 (C.D. Cal. May 10, 2021) (dismissing claims of regulatory takings based on COVID-19 restrictions because the orders were "quintessential examples of regulations that adjust the benefits and burdens of economic life to promote the common good"); *PCG-SP Venture I LLC v. Newsom*, 2020 WL 4344631, at *10 (C.D. Cal. June 23, 2020) ("To the extent [COVID-19 restriction orders] temporarily deprive Plaintiff of the use and benefit of its Hotel, the Takings Clause is indifferent. The State is entitled to prioritize the health of the public over the property rights of the individual."); *Excel Fitness Fair Oaks, LLC v. Newsom*, 2021 WL 795670, at *5 (E.D. Cal. Mar. 2, 2021) ("Plaintiffs' takings claim under the Fifth Amendment [based on COVID-19 business restrictions] therefore fails as a matter of law and must be dismissed.").

As to Plaintiff Bols, the County Defendants argue that the eviction moratorium on which Bols' claims against the County Defendants are based on never applied to Bols' rental properties, because the County Defendants' eviction moratorium only applied to the unincorporated portions of San Diego County. The County Defendants submit the following: (1) Resolution No. 20-027 and Resolution No. 20-066, which, by their own terms, are limited to the unincorporated areas of the County of San Diego, (ECF No. 130-7, Exhs. 14, 15); and (2) Bols' answers to the County Defendants' interrogatories as well as

portions of Bols' deposition, in which Bols admitted that none of the properties underlying his legal claims were located within the unincorporated portions of San Diego County. (*See* ECF No. 114-2, Exhs. E, F, I.)

Plaintiffs have filed no opposition to the County Defendants' motion for summary judgment.[5]

Accordingly, the Court **GRANTS** the County Defendants' motion for summary judgment.[6]

## C. The Mayor of San Diego

Plaintiff Bols alleges the following causes of action against the Mayor of San Diego: (1) violation of the Contracts Clause; (2) uncompensated takings; (3) violation of his Due Process rights; and (4) violation of his right to liberty under the California Constitution. (ECF No. 55 at 21-33.) Plaintiff Mullins-Boychak alleges the following causes of action against the Mayor of San Diego: (1) uncompensated takings; and (2) violation of her right to liberty under the California Constitution. (*Id.* at 30-33.)

The Mayor argues that Plaintiff Bols lacks standing to bring his claims against the Mayor. "In order to invoke the jurisdiction of the federal courts, a plaintiff must establish the irreducible constitutional minimum of standing, consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (internal quotation marks omitted). The Mayor argues that "two limited liability corporations of which Bols is a member, and not Bols himself, suffered the harms alleged in this lawsuit." (ECF No. 129-1 at 6.) The Mayor submits the following: **(1)** Bols' deposition testimony that the City's

---

[5] "If an opposing party fails to file the papers in the manner required by Civil Local Rule 7.1.e.2, that failure may constitute a consent to the granting of a motion or other request for ruling by the Court." Civ. Local Rule 7.1(f)(3)(c).

[6] The Court does not address the County Defendants' remaining arguments.

eviction moratorium affected three properties located at (a) 6904 Miramar Road, Suites 101-103, (b) 3405 Kenyon Street, No. 107, and (c) 6904 Miramar Road, No. 206, (ECF No. 129-3, Exh. 5 ("Bols Depo.") 16:21-18:3); **(2)** Bols' deposition testimony and copies of leases that show that 2419 29th Street, LLC and 3242 Columbia, LLC held the leases to those properties, (Bols Depo. 21:3-16, ECF No. 129-3, Exhs. 6, 7, 8); and **(3)** Bols' deposition testimony that the LLCs owned and held the mortgages for the properties, (Bols Depo. 101:10-19, 130:1-20). 2419 29th Street, LLC and 3242 Columbia, LLC are not identified as plaintiffs in the Second Amended Complaint. (*See* ECF No. 55.) The Mayor argues that Bols cannot bring a suit for injuries suffered by the LLCs. *See PacLink Commc'ns Int'l, Inc. v. Superior Ct.*, 90 Cal. App. 4th 958, 964 (2001) ("Because members of the LLC hold no direct ownership interest in the company's assets, the members cannot be directly injured when the company is improperly deprived of those assets."). The Mayor also argues that Bols has failed to meet the requirements for a derivative action. "A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile." *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016). "The 'demand futility rule' is also reflected in the heightened pleading standard set forth in Rule 23.1 of the Federal Rules of Civil Procedure, which requires shareholders who bring derivative suits to 'state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.'" *Id.* at 1058. The Second Amended Complaint does not contain such pleadings. (*See* ECF No. 55.) While Plaintiff asserts that he controls the LLCs, he does not dispute the LLCs' ownership of the relevant properties. (*See* ECF No. 140 at 25.) The Court finds that Plaintiff Bols lacks standing.

The Mayor argues that Plaintiff Mullins-Boychak lacks standing because her allegations regarding the forced closure of her hair salon business and restrictions on operating her business cannot be traced to the Mayor's orders identified in the Second Amended Complaint. (ECF No. 129-1 at 9.) The Mayor submits the following: **(1)** Executive Order No. 2020-1, issued on March 16, 2020, which stated that "[a]ll bars, adult entertainment establishments, and nightclubs in the City of San Diego shall be closed to the public and all restaurants and business establishments that serve food in the City of San Diego shall be prohibited from serving food and beverage for consumption on premises," and that all public or private gatherings of 50 or more people in a single space or room at the same time are prohibited (ECF No. 129-3, Exh. 1); **(2)** Emergency Ordinance No. 21177, adopted on March 25, 2020, which established a temporary moratorium on evictions for nonpayment of rent by tenants in the City of San Diego who were directly impacted by COVID-19 and complied with certain procedural requirements detailed in the emergency ordinance, (ECF No. 129-3, Exh. 2); **(3)** Executive Order No. 2020-2, issued on March 30, 2020, which extended the effect of Executive Order No. 2020-1 to April 30, 2020 and ordered that all San Diego City landlords comply with Emergency Ordinance No. 21177, (ECF No. 129-3, Exh. 3); and **(4)** the deposition of Mullins-Boychak, where she stated that a rule prohibiting more than 50 people in the same room at the same time would not affect her hair salon business and that she did not recall being told whether any city order related to COVID-19 applied to her business, (ECF No. 129-3, Exh. 10 ("Mullins-Boychak Depo." 10:16-11:5, 15:23-16:16). The text of the Mayor's orders identified in the Second Amended Complaint do not order the shutdown of hair salons. Plaintiffs' opposition fails to address the Mayor's argument regarding Mullins-Boychak. (*See* ECF No. 140.) The Court finds that Plaintiff Mullins-Boychak lacks standing. //

The Mayor argues that Emergency Ordinance No. 21177, the temporary eviction moratorium, does not violate the Contracts Clause. "The threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship." *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 913 (9th Cir. 2021). "If the law is a substantial impairment, then the inquiry turns to the means and ends of the legislation. At that point, a court must determine whether the law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (internal quotation marks omitted). An "eviction moratorium must be upheld, even if it is a substantial impairment of contractual relations, if its adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption." *Id.* Therefore, the Court only addresses the second prong of the test. Emergency Ordinance No. 21177 states: **(1)** that the basis of the eviction moratorium is the COVID-19 pandemic; **(2)** that "approximately 46 percent of the City's households rent their homes"; **(3)** that "in the interest of protecting the public health and preventing transmission of COVID-19, it is essential to avoid unnecessary housing displacement during the emergency and to prevent housed individuals from falling into homelessness"; **(4)** that "displacement of residential tenants caused by eviction would create undue hardship on these tenants by making it difficult to follow public health orders and guidance of social distancing and isolation, and would further put them at risk of homelessness due to the City's documented shortage of affordable housing, putting these tenants and the general public at great risk"; **(5)** that the "Ordinance enacts a temporary moratorium on residential evictions intended to promote economic stability and fairness within the City's rental market during the COVID-19 pandemic, to prevent avoidable homelessness, to preserve the public peace, health, safety, and public welfare, and to enable tenants in the City whose

income and ability to work is affected by COVID-19"; **(6)** that "business closures and reduced business hours, in addition to public health orders to limit public gatherings and socially distance, will have a financial impact on local businesses. and displacement of commercial tenants caused by eviction would worsen the present crisis by causing financial instability for business owners and employees and by reducing the available jobs for City residents once the crisis is abated"; **(7)** that the Ordinance enacts a temporary moratorium on commercial evictions intended to promote economic stability and fairness and to promote a stable business and job market for employers and employees to return to once the emergency is abated"; and **(8)** that "it is in the public interest to take steps to ensure people remain housed and to ensure local businesses are not evicted during this public health emergency." (ECF No. 129-3, Exh. 2.) The eviction moratorium is temporary, limited to "evictions for nonpayment of rent by residential and commercial tenants in the City of San Diego who are directly impacted by [COVID-19]," and places certain procedural requirements on the eviction protections. (*Id.*) The Court finds that Emergency Ordinance No. 21177 is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. *See Apartment Ass'n of Los Angeles Cnty., Inc.*, 10 F.4th at 914 ("The City fairly ties the moratorium to its stated goal of preventing displacement from homes, which the City reasonably explains can exacerbate the public health-related problems stemming from the COVID-19 pandemic. . . . Thus, given the deferential standard that precedent constrains us to apply, we are compelled to conclude that the City's enactments pass constitutional muster under the Contracts Clause. Under current doctrine, we must refuse to second-guess the City's determination that the eviction moratorium constitutes the most appropriate way of dealing with the problems identified. That is particularly so, based on modern Contracts Clause cases, in the face of a public health situation like COVID-19.") (internal citations and

3:20-cv-873-BTM-BLM

quotation marks omitted).

The Court finds that Plaintiffs' uncompensated takings claims against the Mayor fail for the same reason they fail against the County Defendants.

The Court finds that Plaintiffs' substantive due process claim fails, because under a rational basis review, the Mayor's COVID-19 restrictions bear a rational relationship to the legitimate state interest of preventing the spread of COVID-19. *See Slidewaters LLC v. Washington State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("The right to pursue a common calling is not considered a fundamental right. The right to use property as one wishes is also not a fundamental right. Both of those described rights are economic in nature. This court has held that the proper test for judging the constitutionality of statutes regulating economic activity is whether the legislation bears a rational relationship to a legitimate state interest…. There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease.") (internal citations and quotation marks omitted); *Tandon*, 517 F. Supp. 3d at 950 ("Every court to have addressed the issue of whether COVID-related restrictions violated substantive due process rights has concluded that the plaintiffs were not likely to succeed on the merits of their substantive due process claims.").

The Court finds that Plaintiffs' procedural due process claims fail because the challenged orders are ones of general applicability that do not target individual landlords or hair salon owners. *See Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994) ("governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient"); *Tatoma, Inc.*, 2022 WL 686965, at *4 ("The overwhelming consensus of district court cases within California have found no procedural due process violation in similar circumstances."); *Metroflex Oceanside LLC*, 532 F. Supp. 3d at 983 ("Courts have held that in the current

COVID-19 crisis, temporary closures of a business do not implicate procedural due process rights.") (cleaned up); *BK Salons, LLC*, 2021 WL 3418724, at *7 ("the challenged Orders are clearly governmental decisions of general applicability that do not target individual salon owners . . . Plaintiff's procedural due process claim thus fails as a matter of law.").

Accordingly, the Court **GRANTS** the Mayor of San Diego's motion for summary judgment.[7]

## D. The County Defendants' Motion for Sanctions[8]

The County Defendants have filed a motion for sanctions pursuant to Federal Rule of Civil Procedure Rule 11 and 28 U.S.C. § 1927. (ECF No. 114.) The County Defendants argue that "Bols and his attorney violated Rule 11 and 28 U.S.C. § 1927 because, when the First and Second Amended Complaints (and Bols' oppositions to motions to dismiss the same) were filed, they both undoubtedly knew Bols' commercial properties were located in the City of San Diego, and they both knew – or should have known – that the County's eviction moratorium applied only to the unincorporated portion of the County. As a result, Bols and his counsel should be sanctioned as follows: the County Defendants should be dismissed from all causes of action asserted by Bols; and Bols and his counsel should be ordered to reimburse the County Defendants' for the attorneys' fees and costs they incurred related to those causes of action." (ECF No. 114-1 at 1-2.)

"Rule 11(c)(1)(A) provides strict procedural requirements for parties to follow when they move for sanctions under Rule 11." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788 (9th Cir. 2001). "To comply with the Rule, [a defendant is]

---

[7] The Court does not address the Mayor of San Diego's remaining arguments.

[8] The County Defendants' request for leave to file a response to the declaration of Steven D. Baric, (ECF No. 138), is **GRANTED**.

required to serve its Rule 11 motion on the plaintiffs with a demand for retraction of the allegedly offending allegations, and then to allow the plaintiffs at least twenty-one days to retract the pleading before filing the motion with the court." *Id.* at 788-89. "[T]he procedural requirements of Rule 11(c)(1)(A)'s 'safe harbor' are mandatory." *Id.* The County Defendants filed a separate motion for sanctions more than 21 days after they served the motion on counsel for Plaintiff Bols. (ECF No. 114-3.) The proof of service indicates that the following documents were served: (1) the County Defendants' notice of motion and motion for sanctions; (2) memorandum of points and authorities in support of the County Defendants' motion for sanctions; and (3) the declaration of John P. Cooley in support of the County Defendants' motion for sanctions and Exhibits A-M. (ECF No. 114-3, Exh. N.) However, the County Defendants do not provide any proof that they served Plaintiffs with a demand for retraction of the allegedly offending allegations, either as a separate document, or within the motion itself. Accordingly, the Court **DENIES WITHOUT PREJUDICE** the County Defendants' motion for Rule 11 sanctions. *See Hadsell v. Baskin*, 790 F. App'x 97, 98 (9th Cir. 2020) ("The district court did not abuse its discretion in denying [a party's] motion for sanctions because [they] failed to comply with the procedural requirements of Rule 11.").

The County Defendants also argue that "Bols' counsel can and should be sanctioned pursuant to section 1927 of Title 28" because "[h]e has unreasonably and vexatiously multiplied the proceedings in this case by continuing to prosecute Plaintiff Bols' causes of action based on the 2020 Eviction Resolution." (ECF No. 114-1 at 18.)

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Because the section authorizes

sanctions only for the multiplication of proceedings, it applies only to unnecessary filings and tactics once a lawsuit has begun" and "cannot be applied to an initial pleading." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 435. "[S]ection 1927 sanctions must be supported by a finding of subjective bad faith. Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* at 436 (internal citations and quotation marks omitted). "District courts enjoy much discretion in determining whether and how much [§ 1927] sanctions are appropriate."

 *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. The same may be said of the power to sanction under 28 U.S.C. § 1927." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 437 (internal citation and quotation marks omitted).

The County Defendants submit Bols' June 9, 2021 answers to the County Defendants' interrogatories as well as portions of Bols' July 12, 2021 deposition, in which Bols admitted that none of the properties underlying his legal claims were located within the unincorporated portions of San Diego County. (*See* ECF No. 114-2, Exhs. E, F, Bols Depo. 16:10-18:11, 154:9-25, 155:22-25, 156:3-10.)

In response, Bols' attorney, Steven D. Baric, submits a declaration stating that:

> Throughout this process, Plaintiff relied on a theory that both the County and City moratoria impacted the Plaintiff. Specifically, even if Plaintiff possessed no property within the unincorporated portion of the County the prohibition on evictions in the County would impact his ability to pursue a remedy in County courts. Therefore, both Governmental agencies had a substantial involvement and collaboration in the Constitutional violation. Additionally, based on review of case law, Plaintiff was concerned that the County of San Diego may be an indispensable or necessary party to get relief in any "takings" case involving the City of San Diego. This belief was based on the review of both Federal and California case law. . . . The theory

> that both the County and City worked in collaboration was a theory that Plaintiff intended to pursue during discovery. However, on August 12, 2021, in response to Plaintiff's deposition notice, the County of San Diego made clear that they intended to produce no witnesses in response to Plaintiff's requests. On that date, Plaintiff received objections to their Deposition subpoena. At this point, Plaintiff made a decision that fighting the County of San Diego in a prolonged battle over discovery would be too costly. Therefore, we started to consider dismissing the County.

(ECF No. 133 ("Baric Decl. ¶ 3.) Baric also references Judge Benitez's January 26, 2021 order in this case on the County Defendants' motion to dismiss. (Baric Decl. ¶ 2.) In response to the County Defendants' argument, Judge Benitez stated:

> County Defendants principally raise again the argument that Bols has not identified any particular rental property located in the unincorporated portion of San Diego County. They argue he has not identified rents taken by virtue of the county eviction moratorium. Once again, that fact question can be determined quickly later when evidence is required by summary judgment or trial. At this stage, however, County Defendants' motion to dismiss is denied.

(ECF No. 74 at 14.) Baric also states: **(1)** that on September 9, 2021, he emailed John P. Cooley that "Mr. Bols has agreed to dismiss all counts against the county," (Baric Decl. ¶ 4, Exh. 1); **(2)** that starting on September 14, 2021, Baric's grandmother was hospitalized numerous times over a 30 days period due to COVID-19, and as a result Baric took several weeks off work to be the primary caregiver for his grandmother and grandfather, (Baric Decl. ¶ 5); **(3)** that Baric returned to work on October 1, 2021, that shortly thereafter he became aware that his "Pacer email updates on this case were being sent into [his] email spam folder," and that he became aware of the Rule 11 motion on October 21, 2021, (Baric Decl. ¶ 5).

In response to the Baric Declaration, the County Defendants submit the declaration of John P. Cooley, who states: **(1)** that on August 31, 2021, he sent

Baric an email with a stipulation of dismissal, and stated that "Counsel for the State and City have already agreed to the stipulation. If I have your agreement as well, I will add your signature and file it with the Court." (Cooley Decl. ¶ 5, Exh. 3); **(2)** that Baric did not respond to the August 31, 2021 email (Cooley Decl. ¶ 5); **(3)** that on September 10, 2021, in response to Baric's September 9, 2021 email, he asked Baric, "Do I have your authority to file with the court the Stipulation of Dismissal I emailed to you on August 31, 2021?" (Cooley Decl. ¶ 7, Exh. 3); **(4)** that Baric did not respond to the September 10, 2021 email (Cooley Decl. ¶ 7); **(5)** that on September 14, 2021, he sent a follow-up email to Baric asking, "Do I have your authority to file with the court the Stipulation of Dismissal I emailed to you on August 31, 2021? The City and State have already agreed to the Stipulation." (Cooley Decl. ¶ 8, Exh. 3); **(6)** that on October 1, 2021, Baric responded, "I thought I emailed you that you could attach my signature to the stipulation for the motion to dismiss the county," to which Cooley replied, "No, you did not. I sent two emails to you addressing that specific issue and you did not respond to either email," and to which Baric replied, "My apologies. Thank you. Well to be clear I am happy to sign my name on that stipulation." (Cooley Decl. ¶ 10, Exh. 4); and **(7)** that Cooley did not respond to Baric's October 1, 2021 email (Cooley Decl. ¶ 10). On October 13, 2021, the County Defendants filed their motion for summary judgment. (ECF No. 130.)

On current record, the Court is not persuaded that the County Defendants have established that, in pursuing Plaintiff Bols' claims against the County Defendants until the summary judgment stage, Mr. Baric unreasonably and vexatiously multiplied the proceedings in this case and with subjective bad faith. Indeed, Judge Benitez suggested in his January 26, 2021 order in this case on the County Defendants' motion to dismiss that the County Defendants' argument could appropriately be resolved during summary judgment. In addition, Baric consented to his signature being attached to the County Defendants' stipulation

of dismissal, which the County Defendants never filed, before the County Defendants filed their motion for summary judgment. Accordingly, the Court **DENIES** the County Defendants' motion for 28 U.S.C. § 1927 sanctions.

## IV.   CONCLUSION

Based upon the foregoing, the motions for summary judgment of the State Defendants, County Defendants, and Mayor of San Diego are **GRANTED**. The County Defendants' Motion for Sanctions is **DENIED**. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  September 27, 2022

Honorable Barry Ted Moskowitz
United States District Judge

3:20-cv-873-BTM-BLM